Joseph Norman, Jr. v. State of Maryland, No. 56, September Term, 2016

**TRAFFIC STOPS – FRISKS/PAT DOWNS – REASONABLE ARTICULABLE SUSPICION – ARMED AND DANGEROUS – ODOR OF MARIJUANA –** Court of Appeals held that, where odor of marijuana emanates from vehicle with multiple occupants, law enforcement officer may frisk, *i.e.*, pat down, occupant of vehicle if additional circumstance or circumstances give rise to reasonable articulable suspicion that occupant is armed and dangerous. Stated otherwise, Court of Appeals held that, for law enforcement officer to have reasonable articulable suspicion to frisk one of multiple occupants of vehicle from which odor of marijuana is emanating, totality of circumstances must indicate that occupant in question is armed and dangerous. Odor of marijuana alone emanating from vehicle with multiple occupants does not give rise to reasonable articulable suspicion that vehicle's occupants are armed and dangerous and subject to frisk.

Circuit Court for Somerset County
Case No. 19-K-15-010495

Argued: February 3, 2017

IN THE COURT OF APPEALS

OF MARYLAND

No. 56

September Term, 2016

_____

JOSEPH NORMAN, JR.

v.

STATE OF MARYLAND

_____

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

_____

Opinion by Watts, J.
Greene, J., joins the judgment only.
Barbera, C.J., and Adkins, J., concur.
McDonald and Getty, JJ., dissent.

_____

Filed: March 27, 2017

In 2014, the General Assembly decriminalized the possession of less than ten grams of marijuana, and reclassified such possession a "civil offense" rather than a misdemeanor. See 2014 Md. Laws. 1119, 1124 (Vol. II, Ch. 158, S.B. 364); Md. Code Ann., Crim. Law (2002, 2012 Repl. Vol., 2014 Supp.) § 5-601(c)(2).

Recently, in Robinson v. State, ___ Md. ___, ___ A.3d ___, No. 37, Sept. Term, 2016, 2017 WL 244093, at *2 (Md. Jan. 20, 2017), this Court addressed whether, in light of the decriminalization of possession of less than ten grams of marijuana, a law enforcement officer has probable cause to search a vehicle based on an odor of marijuana emanating from the vehicle. This Court unanimously held that

> a law enforcement officer has probable cause to search a vehicle where the law enforcement officer detects an odor of marijuana emanating from the vehicle, as marijuana in any amount remains contraband, notwithstanding the decriminalization of possession of less than ten grams of marijuana; and the odor of marijuana gives rise to probable cause to believe that the vehicle contains contraband or evidence of a crime.

Id. This case requires us to decide a different issue involving the odor of marijuana emanating from a vehicle—namely, whether a law enforcement officer who detects an odor of marijuana emanating from a vehicle with multiple occupants has reasonable articulable suspicion that the vehicle's occupants are armed and dangerous, and thus may frisk—i.e., pat down—the vehicle's occupants for weapons.

In this case, Trooper First Class Jon Dancho of the Maryland State Police ("Trooper Dancho") initiated a traffic stop of a vehicle in which Joseph Norman, Jr. ("Norman"), Petitioner, was the front seat passenger. Trooper Dancho detected what he described as a strong odor of fresh marijuana emanating from the vehicle. Trooper Dancho ordered the

vehicle's three occupants to exit the vehicle so that he could search the vehicle for marijuana. Before searching the vehicle, Trooper Dancho frisked Norman and uncovered marijuana.

Norman contends that the odor of marijuana emanating from a vehicle, without more, does not give rise to reasonable articulable suspicion to believe that the vehicle's occupants are armed and dangerous. The State, Respondent, argues that the odor of marijuana emanating from a vehicle gives rise to a reasonable inference that all of the vehicle's occupants are engaged in the common enterprise of drug dealing—which is often associated with guns.

We reaffirm our holding in <u>Robinson</u>, 2017 WL 244093, at \*2, that the odor of marijuana alone gives rise to probable cause to search a vehicle because the odor of marijuana indicates that the vehicle contains contraband or evidence of a crime. We hold that, where an odor of marijuana emanates from a vehicle with multiple occupants, a law enforcement officer may frisk, *i.e.*, pat down, an occupant of the vehicle if an additional circumstance or circumstances give rise to reasonable articulable suspicion that the occupant is armed and dangerous. Stated otherwise, for a law enforcement officer to have reasonable articulable suspicion to frisk one of multiple occupants of a vehicle from which an odor of marijuana is emanating, the totality of circumstances must indicate that the occupant in question is armed and dangerous. An odor of marijuana alone emanating from a vehicle with multiple occupants does not give rise to reasonable articulable suspicion that the vehicle's occupants are armed and dangerous and subject to frisk.

**BACKGROUND**

In the Circuit Court for Somerset County ("the circuit court"), the State charged Norman with possession of marijuana with intent to distribute, possession of marijuana, and possession of drug paraphernalia. Norman filed a motion to suppress, challenging "the stop and the fruits thereof." The circuit court conducted a hearing on the motion to suppress.

At the hearing, as the only witness for the State, Trooper Dancho testified that, on March 22, 2015, at approximately 9 p.m., he initiated a traffic stop of a 1996 Nissan with an inoperable right taillight near southbound U.S. Route 13 at Allen Road in Princess Anne. In addition to the driver, Norman was in the vehicle's front passenger seat, and another passenger was in the backseat. Trooper Dancho called for backup. Within a few minutes, two more troopers arrived. Trooper Dancho "made contact" with the driver, and detected a strong odor of fresh marijuana emanating from the vehicle's passenger compartment. Trooper Dancho told the vehicle's three occupants to exit the vehicle so that he could search the vehicle for marijuana.

Trooper Dancho testified that, before searching the vehicle, for his safety, he frisked the vehicle's occupants to look for weapons. Within two minutes of telling the vehicle's occupants to exit the vehicle, Trooper Dancho frisked the driver for approximately thirty seconds, and did not find any weapons or drugs. Trooper Dancho then frisked Norman, and Trooper Dancho felt what seemed like "large quantities of some foreign objects in his pants[.]" Trooper Dancho felt what seemed like plastic- or cellophane-covered, individually packaged bags of drugs in Norman's pants pocket. Trooper Dancho asked

Norman what was in his pants pocket. Norman did not reply. Trooper Dancho testified that he moved Norman's pants pockets to make sure that what was in Norman's pants was not a weapon. Trooper Dancho "shook" Norman's pants pocket, and a bag of marijuana fell onto the ground. Trooper Dancho frisked the other passenger, and did not find any weapons or drugs.

After frisking all three of the vehicle's occupants, Trooper Dancho searched the vehicle, and found a grinder with traces of marijuana, as well as a small amount of marijuana in the dashboard's center compartment, above the gear shift. Trooper Dancho arrested Norman and transported him to the State Police Barrack. At the Barrack, Trooper Dancho searched Norman, and located another bag of marijuana, which fell from Norman's pants. Trooper Dancho read Norman his Miranda rights,[1] which Norman waived. Norman admitted that all of the drugs and drug paraphernalia in the vehicle belonged to him, and claimed that they were for his personal use. On cross-examination, Trooper Dancho acknowledged that there is a difference between a frisk and a search of a person, and acknowledged that, in his report, he had written that he searched Norman prior to searching the vehicle.

As a witness for Norman, Franklin Braham ("Braham") testified[2] that on March 22, 2015, he was a passenger in a vehicle with Norman and Trevon Lamar Robinson

---

[1]See Miranda v. Arizona, 384 U.S. 436 (1966).
[2]Before Braham testified, the circuit court advised him of his right to remain silent in light of the circumstance that he was also in the vehicle during the traffic stop. The circuit court advised Braham that, although the State had not charged him, it might do so if Braham's testimony created a reason to charge him.

- 4 -

("Robinson"), the driver. A law enforcement officer stopped the vehicle and said that a taillight was out. The law enforcement officer used his radio, and, thirty seconds later, two more law enforcement officers approached. The first law enforcement officer returned to the vehicle, said that he smelled marijuana, and pulled Robinson out of the vehicle. Another law enforcement officer pulled Norman out of the vehicle, and the third law enforcement officer pulled Braham out of the vehicle. According to Braham, all three of the vehicle's occupants were frisked twice. Braham testified that during Norman's frisk, the law enforcement officer was "tugging all over" Norman's body, and marijuana "fell out." According to Braham, the law enforcement officer put his hand under Norman's pants. After the traffic stop, Braham checked the vehicle's taillights, and the taillights seemed to be working.

As a witness on his own behalf, Norman testified that on March 22, 2015, he was a passenger in a vehicle when it was stopped. According to Norman, a law enforcement officer other than Trooper Dancho told him to exit the vehicle, and he did so. The law enforcement officer led Norman to the back of the vehicle and told him to undo his belt buckle, then place his hands on the vehicle; Norman did so. The law enforcement officer patted Norman's chest and waist, moved his hands around Norman's boxer briefs' waistband, and then checked Norman's right pant leg, where the law enforcement officer found marijuana. As he was being frisked, Norman looked at the rear of the vehicle and saw that all of the lights were on.

After Norman's testimony, the State recalled Trooper Dancho, who testified as a rebuttal witness that the vehicle's right taillight was inoperable and that, during the frisks,

he did not put his hand inside anyone's clothing or under anyone's pants.

After Trooper Dancho's testimony, the circuit court heard argument from the parties. Norman's counsel contended that Trooper Dancho lacked reasonable articulable suspicion that Norman was armed and dangerous, and pointed out that there were multiple officers present, which ameliorated the risk of danger. Norman's counsel asserted that the odor of marijuana does not give rise to probable cause to search a vehicle in light of the decriminalization of possession of less than ten grams of marijuana. The prosecutor argued that possession of any amount of marijuana was criminal at the time of the traffic stop, and maintained that, based on the odor of marijuana alone, Trooper Dancho would not have known whether the vehicle contained more or less than ten grams of marijuana, and that, as such, Trooper Dancho had reason to believe that criminal activity was afoot.

The circuit court denied the motion to suppress. The circuit court found that Trooper Dancho conducted a frisk of Norman as opposed to a search of his person, and that the trooper properly Mirandized Norman. The circuit court concluded that Trooper Dancho had reasonable articulable suspicion that Norman was armed and dangerous. The circuit court stated that "guns are often associated with drug activity[,]" and then concluded that it was "persuaded that under the totality of the circumstances in this case that a pat down for weapons was reasonable."

### Other Proceedings in the Circuit Court

Norman waived his right to a jury trial, and proceeded by way of a not guilty agreed statement of facts, reserving the right to appeal the circuit court's denial of his motion to suppress. The circuit court found Norman guilty of possession of marijuana, and sentenced

him to nine months of imprisonment. The State nol prossed the charges for possession of marijuana with the intent to distribute and possession of drug paraphernalia. Norman noted an appeal.

## Proceedings in the Court of Special Appeals

In an unreported opinion, the majority of a panel of the Court of Special Appeals affirmed the circuit court's judgment. See Norman v. State, No. 1408, Sept. Term 2015, 2016 WL 4261800, at *5 (Md. Ct. Spec. App. Aug. 11, 2016). The Court of Special Appeals held that Trooper Dancho had probable cause to search the vehicle when he smelled marijuana emanating from the vehicle. See id. at *3. The Court concluded that "[t]hat probable cause in turn raised reasonable, articulable suspicion that all occupants of the vehicle were engaged in a joint enterprise and together were in possession of drugs." Id. at *5. The Court further stated: "Based on the totality of the circumstances, we agree with the circuit court that the Trooper had legitimate concerns about his own safety and that it was reasonable for him to frisk [] Norman for weapons before conducting a probable cause search of the vehicle." Id. at *5.

Judge Cathy Hollenberg Serrette, a judge of the Circuit Court for Prince George's County who had been specially assigned, dissented, concluding that there was insufficient evidence to support a finding that Trooper Dancho had reason to believe that Norman was armed and dangerous. See id. Judge Serrette determined that the Court of Special Appeals applied a categorical exception to the Fourth Amendment, such that the indication of the presence of any drugs during a traffic stop, including a noncriminal amount of marijuana, justified a frisk for weapons. See id. at *7.

**Petition for a Writ of *Certiorari***

Norman petitioned for a writ of *certiorari*, raising the following two issues:

1. Does the smell of raw marijuana coming from a car stopped for a traffic violation provide [a law enforcement officer] with reasonable suspicion to believe that all passengers in the car are armed and dangerous, such that a pat down, or *Terry* frisk,[3] of the passengers is permissible?

2. When Trooper Dancho stopped a car with three individuals in it at night because its rear tail[]light was inoperable and smelled the "strong odor of raw marijuana coming from the passenger compartment," did he have reasonable suspicion to believe that [] Norman, who was the front seat passenger, was armed and dangerous, in the absence of any factors suggesting that [] Norman or the other [occupant]s posed a risk to [Trooper Dancho]?

This Court granted the petition. See Norman v. State, 450 Md. 216, 147 A.3d 394 (2016).

**DISCUSSION**

**The Parties' Contentions**

Norman contends that the circuit court erred in denying the motion to suppress, as Trooper Dancho lacked reasonable articulable suspicion that he was armed and dangerous. Norman argues that, where a law enforcement officer initiates a traffic stop and reasonably suspects that the occupants possess marijuana, it does not necessarily follow that the law enforcement officer has reasonable articulable suspicion that the occupants are armed and dangerous. Norman asserts that, where a law enforcement officer detains a person who is suspected of having committed a minor offense, there must be other circumstances to justify a frisk of the person. Norman maintains that, here, no circumstances even remotely suggested that Norman was armed and dangerous. Norman points out that, for example,

---

[3]See Terry v. Ohio, 392 U.S. 1 (1968).

there was no evidence that he was nervous or agitated, made furtive movements, or failed to comply with Trooper Dancho's instructions. Norman argues that there was no evidence that his hands were not visible at all times or that there were any bulges in his pockets. And, Norman asserts that there was no evidence that he had any prior convictions, much less convictions for crimes of violence, or that Trooper Dancho knew from experience that he carried a weapon, or had been involved in any violent activity.

Norman contends that it is an overgeneralization to conclude, based on a supposed association between guns and drugs, that an odor of marijuana alone gives rise to reasonable articulable suspicion that a vehicle's occupants are armed and dangerous. Norman argues that there were no additional circumstances indicating that he was engaged in drug dealing—for example, there was no testimony that the vehicle contained air fresheners; that he answered Trooper Dancho's questions evasively; or that the vehicle's occupants gave inconsistent information about where they were going, provided false names, or failed to produce identification. Norman points out that Trooper Dancho did not testify that, based on experience, he knows that people who possess marijuana for personal use often carry weapons. Norman maintains that not every occupant in a vehicle from which the odor of marijuana is emanating poses a risk of danger to a law enforcement officer and that, for those occupants who do not, the State's interest in the law enforcement officer's safety is outweighed by the occupant's individual privacy interest.

The State responds that the circuit court was correct in denying the motion to suppress, as Trooper Dancho had reasonable articulable suspicion that Norman was armed and dangerous. The State contends that the strong odor of marijuana emanating from the

vehicle in which Norman was an occupant justified the frisk of Norman. The State argues that this Court has noted a connection between drugs and guns, and asserts that it is reasonable to infer that a vehicle's occupants are engaged in a common enterprise with each other—for example, drug dealing. The State maintains that the following circumstances constituted evidence of drug dealing by the occupants of the vehicle in which Norman was a passenger: Trooper Dancho smelled an odor of fresh marijuana, as opposed to burnt marijuana, and the odor was strong, in a car at night. The State contends that, although the right to frisk does not necessarily follow where a law enforcement officer is aware of facts consistent with the presence of a small quantity of marijuana, according to the State, in this case, no information was known to Trooper Dancho that the occupants had a small quantity of marijuana. The State points out that Trooper Dancho knew only that there was a strong odor of fresh marijuana emanating from a vehicle at night, and three occupants were in the vehicle.

### The Standard of Review

In Varriale v. State, 444 Md. 400, 410, 119 A.3d 824, 830 (2015), this Court stated:

> In reviewing a trial court's ruling on a motion to suppress, an appellate court reviews for clear error the trial court's findings of fact, and reviews without deference the trial court's application of the law to its findings of fact. The appellate court views the trial court's findings of fact, the evidence, and the inferences that may be drawn therefrom in the light most favorable to the party who prevails on the issue that the defendant raises in the motion to suppress.

(Citation omitted).

### The Fourth Amendment, Reasonable Articulable Suspicion, and Frisks

The Fourth Amendment to the Constitution of the United States provides: "The right

- 10 -

of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]"[4] For the Fourth Amendment's purposes, a "seizure" of a person is any nonconsensual detention. See Barnes v. State, 437 Md. 375, 390, 86 A.3d 1246, 1255 (2014). There are two types of seizures of a person: (1) an arrest, whether formal or *de facto*, which must be supported by probable cause; and (2) a Terry stop, which must be supported by reasonable articulable suspicion. See Barnes, 437 Md. at 390, 86 A.3d at 1255. During a Terry stop, for the sake of the safety of the law enforcement officer and others, a law enforcement officer may frisk a person who the law enforcement officer has reason to believe is armed and dangerous. See Sellman v. State, 449 Md. 526, 541-42, 144 A.3d 771, 780-81 (2016).

A law enforcement officer has reasonable articulable suspicion that a person is armed and dangerous where, under the totality of the circumstances, and based on reasonable inferences from particularized facts in light of the law enforcement officer's experience, a reasonably prudent law enforcement officer would have felt that he or she was in danger. See id. at 542, 144 A.3d at 781. Because a court considers the totality of the circumstances, the court must not parse out each individual circumstance; in other words, a court must not engage in a "divide and conquer" analysis. See id. at 543, 544, 144 A.3d at 781, 782. Indeed, a circumstance may be innocent by itself, but appear suspicious when considered in combination with other circumstances. See id. at 544, 144

---

[4]The Fourth Amendment applies to the States through the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States. See Barnes v. State, 437 Md. 375, 390, 86 A.3d 1246, 1255 (2014).

- 11 -

A.3d at 782.

Reasonable articulable suspicion is a commonsense, nontechnical concept that depends on practical aspects of day-to-day life; as such, a court must give due deference to a law enforcement officer's experience and specialized training, which enable the law enforcement officer to make inferences that might elude a civilian. See id. at 543, 144 A.3d at 781. That said, although reasonable articulable suspicion is a lesser standard than probable cause, it must be greater than an inchoate and unparticularized suspicion or hunch. See id. at 543, 144 A.3d at 781. And, a law enforcement officer may not frisk a defendant simply because the law enforcement officer initiated a lawful traffic stop. See id. at 545, 144 A.3d at 782.

A frisk is different from a search of a person. See Bailey v. State, 412 Md. 349, 369, 987 A.2d 72, 84 (2010). Whereas a search has the broad purpose of discovering incriminating evidence, a frisk has the limited purpose of discovering weapons. See id. at 368-69, 987 A.2d at 84. In In re David S., 367 Md. 523, 545, 789 A.2d 607, 619 (2002), we stated:

> The objective [of a frisk] is to discover weapons readily available to a suspect that may be used against the officer, not to ferret out carefully concealed items that could not be accessed without some difficulty. General exploratory searches are not permitted, and police officers must distinguish between the need to protect themselves and the desire to uncover incriminating evidence.

(Citation, brackets, and internal quotation marks omitted). In other words, "[t]he officer may not exceed the limited scope of a pat[]down for weapons to search for contraband." Bailey, 412 Md. at 369, 987 A.2d at 84.

In Reid v. State, 428 Md. 289, 297, 51 A.3d 597, 602 (2012), we distinguished

between an investigatory stop and a frisk, explaining:

> In its landmark decision in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court interpreted the Fourth Amendment to permit a law enforcement officer to stop an individual that the officer suspected may have been involved in criminal activity. The Court held if an officer has reasonable, articulable suspicion that the suspect was armed, the officer could frisk the individual for weapons. *Id.* at 24, 88 S. Ct. at 1881, 20 L.Ed.2d at 907-908. The Court noted, however, that this exception to the requirement that an officer have probable cause before conducting a search was narrowly drawn and limited to frisking only the individual's clothing for weapons. *Id.* at 29-30, 88 S. Ct. at 1884–85, 20 L.Ed.2d at 911.

And, in Holt v. State, 435 Md. 443, 459, 78 A.3d 415, 424 (2013), we further explained the circumstances under which an investigative stop may occur, stating that "[a] law enforcement officer may conduct a brief investigative 'stop' of an individual if the officer has a reasonable suspicion that criminal activity is afoot." (Citation and some internal quotation marks omitted). Thus, a law enforcement "officer who has a reasonable suspicion that a particular person has committed, is committing, or is about to commit a crime may detain that person briefly in order to investigate the circumstances that provoked suspicion." Id. at 459, 78 A.3d at 424 (citation and internal quotation marks omitted).

In Sellman, 449 Md. at 557, 144 A.3d at 790, this Court held that law enforcement officers may not conduct a pat down of occupants of a vehicle merely because the driver consents to a search of the vehicle. In Sellman, id. at 531, 144 A.3d at 774, while patrolling a high-crime area at night, law enforcement officers saw the defendant walk from a dark spot near an apartment building toward a spot that was lit by a streetlight. Upon seeing the law enforcement vehicle, the defendant abruptly stopped and waited for the law enforcement vehicle to drive past him. See id. at 531-32, 144 A.3d at 774-75. The

- 13 -

defendant walked to, and entered, a parked vehicle that contained three other occupants. See id. at 532, 144 A.3d at 775. The vehicle drove away, and the law enforcement officers followed the vehicle, saw that it had a broken taillight, and initiated a traffic stop. See id. at 532, 144 A.3d at 775. The defendant—who was the left-rear passenger—"was sitting completely rigid in his seat[;] he had his hands on his knees[,] was looking straight ahead[,] and never turned his head once." Id. at 532-33, 144 A.3d at 775-76. One of the law enforcement officers asked the vehicle's occupants if any of the occupants lived in the nearby apartment complex, and only the right-rear passenger stated that she did; however, later, the driver stated that the defendant lived in the apartment complex. See id. at 534, 144 A.3d at 776. One of the law enforcement officers asked the defendant whether he lived in the apartment complex, and he replied in the negative. See id. at 535, 144 A.3d at 776. The defendant provided a false name to the law enforcement officer, who was unable to find any records under that name. See id. at 535, 144 A.3d at 776-77. After these events, one of the law enforcement officers frisked the defendant and found a handgun. See id. at 536, 144 A.3d at 777.

This Court observed that, although the law enforcement officers testified that there had been thefts from vehicles in the area, they did not testify about any circumstances that would have provided "individualized, objective reasonable suspicion that [the defendant] was involved in the crime of theft of property from cars." Id. at 545, 144 A.3d at 782. For example, the law enforcement officers did not testify that they "observe[d] furtive gestures, evasive maneuvers, bulges, bags or containers, or any instruments associated with the suspected crime of theft, i.e., theft of property from cars." Id. at 546, 144 A.3d at 783.

- 14 -

This Court stated that the record showed that the law enforcement officers were in control during the traffic stop, and a reasonably prudent officer would not have reasonably suspected that any of the vehicle's occupants was armed and dangerous. See id. at 546, 144 A.3d at 783. This Court held that a police department policy, under which law enforcement officers could frisk all of a vehicle's occupants in the process of conducting a consent search of the vehicle, would be unlawful. See id. at 557, 144 A.3d at 790. This Court reiterated that a frisk must be supported by reasonable articulable suspicion, and rejected the principle that a law enforcement officer may conduct a frisk "as a matter of routine caution[.]" Id. at 557-58, 144 A.3d at 790 (citation and internal quotation marks omitted).

In Sellman, there was a dissenting opinion. The dissent disagreed with the Majority solely as to the application of the law to the facts, and stated: "The resolution of this case does not augment or enhance existing stop-and-frisk case law. It demonstrates only a disagreement between the Majority and the Court of Special Appeals and the circuit court as to the analysis of the facts of the case under existing case law." Id. at 563, 144 A.3d at 793 (Watts, J., dissenting). The dissent would have concluded that the law enforcement officers had reasonable articulable suspicion to frisk the defendant under the totality of the circumstances, including:

> (1) the stop occurred late at night in a high-crime area; (2) specifically, [the law enforcement officer] testified that there had been multiple thefts from vehicles, a shooting, illegal handgun possessions, and drug arrests at the apartment complex; (3) [the defendant] behaved nervously before and during the stop; (4) specifically, [the defendant] came out of the darkened area of the apartment complex, made evasive movements upon seeing the law enforcement vehicle, and behaved nervously within the vehicle during the

stop; (5) [the driver] advised that [the defendant] lived at the apartment complex, while [the defendant] did not respond when [the law enforcement officer] asked if anyone in the vehicle lived at the apartment complex; and (6) [the defendant] provided false identification to [the law enforcement officer].

Id. at 567-68, 144 A.3d at 796 (Watts, J., dissenting). In other words, the dissent took no issue with the Majority's premise that routine frisks for officers' safety during traffic stops are not permitted, but rather would have concluded that additional circumstances giving rise to reasonable articulable suspicion that the defendant was armed and dangerous were present. The dissent stated "that, under the totality of the circumstances, the evidence [was] sufficient to establish that [the law enforcement officer] had reasonable articulable suspicion to believe that criminal activity was afoot and that [the defendant] presented a danger to the officers at the time of the frisk." Id. at 576-77, 144 A.3d at 801 (Watts, J., dissenting).

In Dashiell v. State, 374 Md. 85, 110, 821 A.2d 372, 387 (2003), this Court held that a law enforcement officer has reasonable articulable suspicion to frisk a defendant while "executing a search warrant based upon an application which specifically articulates that the search is to be of an armed individual and of a residence where weapons may be found[.]" In Dashiell, id. at 91, 821 A.2d at 375, law enforcement officers investigated a suspected drug dealer named Bivens, and applied for a warrant to search Bivens and two residences in which Bivens was suspected to be concealing drugs. In the search warrant application, the law enforcement officers stated that a "concerned source of information" had reported seeing Bivens with a handgun and had seen several guns inside one of the residences. Id. at 91-92, 821 A.2d at 376. The trial judge issued the warrant, finding that

there was probable cause to believe that criminal activity was occurring at the residence.

See id. at 92, 821 A.2d at 376. Law enforcement officers executed the warrant; at the time,

Bivens was not at the residence, but the defendant, his two children, and another adult were.

See id. at 92, 821 A.2d at 376. Law enforcement officers handcuffed everyone in the

residence, searched the residence, and frisked everyone for weapons. See id. at 92, 821

A.2d at 376. While frisking the defendant, a law enforcement officer discovered a bag of

cocaine in the defendant's pants pocket. See id. at 92, 821 A.2d at 376.

> This Court concluded that, based on the law enforcement officers'
>
> experience, their knowledge of the relationship between guns and drugs, their knowledge of Bivens'[s] violent past and *witnesses' observations of weapons located inside the house*, [the officers] had considerable evidence from reliable sources that a drug trafficking operation was being conducted at [the residence] and, under the totality of these circumstances, had significant reasons to fear for their safety and the safety of others during the execution of the [] search warrant.

Id. at 98, 821 A.2d at 380 (emphasis in original). This Court stated: "Weapons and guns

are widely known to be used in narcotics trafficking and, in this case, [law enforcement

officers] had particularized knowledge that 'several guns' were located within the

[residence]." Id. at 101-02, 821 A.2d at 381-82 (footnote omitted). Similarly, in its opinion

in Dashiell v. State, 143 Md. App. 134, 153, 792 A.2d 1185, 1196 (2002), aff'd, 374 Md.

85, 821 A.2d 372 (2003), the Court of Special Appeals stated: "The degree of danger

present at [the residence] was compounded by the nature of drug trafficking. Persons

associated with the drug business are prone to carrying weapons." (Citations and footnote

omitted). The Court of Special Appeals noted that, "[i]n the application for the search

warrant, affiants stated they were keenly aware through their training and experience 'that

individuals in the distribution of controlled dangerous substances . . . carry all types of weapons which puts the officers in danger during the execution of search and seizure warrants." Id. at 154, 792 A.2d at 1196 (ellipsis in original).

In Bost v. State, 406 Md. 341, 360, 958 A.2d 356, 367 (2008), this Court referenced the above-quoted statement from Dashiell, 143 Md. App. at 153, 792 A.2d at 1196, as support for the proposition that "[g]uns often accompany drugs, and many courts have found an 'indisputable nexus between drugs and guns.'" (Quoting United States v. Sakyi, 160 F.3d 164, 169 (4th Cir. 1998)). In Bost, 406 Md. at 346, 359-60, 958 A.2d at 359, 367, this Court held that the Maryland Uniform Act on Fresh Pursuit authorized law enforcement officers of the District of Columbia Metropolitan Police Department to enter Maryland in fresh pursuit of a defendant who, without provocation, fled from the officers in a high-crime, drug-trafficking area, and was clutching his right side, thus leading the officers to believe that he was armed. Under the Maryland Uniform Act on Fresh Pursuit, a law enforcement officer from another jurisdiction may pursue a person into Maryland where the officer has reasonable suspicion to believe that the person has committed a felony. See id. at 350-51, 958 A.2d at 362. The Maryland Uniform Act on Fresh Pursuit provided, in pertinent part:

> A member of a state, county, or municipal law enforcement unit of another state who enters this State in fresh pursuit and continues within this State in fresh pursuit of a person to arrest the person on the ground that the person is believed to have committed a felony in the other state has the same authority to arrest and hold the person in custody as has a member of a duly organized State, county, or municipal corporation law enforcement unit of this State to arrest and hold a person in custody on the ground that the person is believed to have committed a felony in this State.

- 18 -

<u>Id.</u> at 350-51, 958 A.2d at 362 (footnote omitted) (quoting Md. Code Ann., Crim. Proc. § 2-305(a)). In <u>Bost</u>, 406 Md. at 352, 958 A.2d at 363, this Court equated "reasonable ground for believing that a felony has been committed," as used in the Maryland Uniform Act on Fresh Pursuit, with reasonable suspicion.

In <u>Bost</u>, <u>id.</u> at 359, 958 A.2d at 367, this Court concluded that there was reasonable suspicion to believe that the defendant had committed a felony. This Court noted that the defendant was seen by law enforcement officers in a high-crime, drug-trafficking area, the defendant fled from the law enforcement officers, and the flight was unprovoked. <u>See id.</u> at 359, 958 A.2d at 367. Moreover, the officers testified that they believed that the defendant was clutching and concealing a weapon at his side as he fled, and that, based on their experience in other cases, the clutching was consistent with possession of a concealed weapon. <u>See id.</u> at 360, 958 A.2d at 367. Under these circumstances, this Court employed the quote from <u>Dashiell</u>, 143 Md. App. at 153, 792 A.2d at 1196, indicating that many courts have found a connection between drugs and guns. <u>See Bost</u>, 406 Md. at 360, 958 A.2d at 367.

The Court of Special Appeals has recognized a connection between drugs and guns in other cases. One such case is <u>Stokeling v. State</u>, 189 Md. App. 653, 666, 985 A.2d 175, 182 (2009), <u>cert. denied</u>, 414 Md. 332, 995 A.2d 297 (2010), in which the Court of Special Appeals held that a law enforcement officer had reasonable articulable suspicion that a defendant was armed and dangerous, and thus was justified in performing a frisk for weapons. The defendant was a passenger in a vehicle of which a law enforcement officer initiated a traffic stop. <u>See Stokeling</u>, 189 Md. App. at 666-67, 985 A.2d at 182-83. A

- 19 -

narcotics dog alerted to the presence of drugs in the vehicle. See id. at 666, 985 A.2d at 182. The law enforcement officer noticed that both the defendant and the driver appeared nervous, and saw that the defendant was breathing rapidly and shaking. See id. at 667-68, 985 A.2d at 183-84. The law enforcement officer asked the defendant to exit the vehicle; the defendant did so, and continued to shake and appear nervous. See id. at 668, 985 A.2d at 184. The law enforcement officer asked the defendant why he was shaking, and the defendant replied that it was cold out, when in actuality it was a hot summer night. See id. at 668, 985 A.2d at 184.

The Court of Special Appeals held that, where a narcotics dog alerts to the presence of drugs in a vehicle with more than one occupant, there is reasonable articulable suspicion to believe that all of the vehicle's occupants are engaged in a joint enterprise and jointly possess drugs. See id. at 667, 985 A.2d at 183. The Court concluded that, in light of a connection between drugs and guns, reasonable articulable suspicion of drug possession gives rise to reasonable articulable suspicion of possession of a firearm. See id. at 667, 985 A.2d at 183. The Court noted that, although this Court has cautioned against considering nervousness in an analysis of reasonable articulable suspicion, the defendant's nervousness was entitled to at least some weight in light of the circumstance that the narcotics dog had alerted to the presence of drugs in the vehicle. See id. at 668, 985 A.2d at 184.

In a variety of other contexts, the Court of Special Appeals has commented on a connection between drugs and guns. For example, in Banks v. State, 84 Md. App. 582, 583-85, 581 A.2d 439, 440-41 (1990), where the defendant was convicted of distribution

of cocaine, the Court of Special Appeals held that a trial court erred in admitting into evidence photographs of the defendant holding a handgun and wearing a fedora. In evaluating the admissibility of the evidence, the Court observed that "[p]ossession and, indeed, use, of weapons, most notably, firearms, is commonly associated with the drug culture; one who is involved in distribution of narcotics, it is thought, *a fortiori*, would be more prone to possess, and/or use, firearms, or other weapons, than a person not so involved." Id. at 591, 581 A.2d at 444.

In Whiting v. State, 125 Md. App. 404, 405, 410, 725 A.2d 623, 624, 626-27 (1999)—a case in which the defendant was convicted of possession of heroin with intent to distribute, possession of cocaine, and unlawful transportation of a handgun—the Court of Special Appeals held that, where a law enforcement officer lawfully seized a pipe from a defendant's person and a handgun from the front seat of a vehicle that the defendant had been driving, the law enforcement officer had probable cause to believe that the trunk of the vehicle contained contraband. The Court stated: "[W]e have acknowledged a nexus between drug distribution and guns, observing that a person involved in drug distribution is more prone to possess firearms than one not so involved." (Citing Banks, 84 Md. App. at 591, 581 A.2d at 444).

In Davis v. State, 144 Md. App. 144, 148, 155-56, 797 A.2d 84, 86, 91-92 (2002), rev'd, 383 Md. 394, 859 A.2d 1112 (2004), a case in which the defendant was convicted of possession of marijuana with the intent to distribute, the Court of Special Appeals held, among other things, that a no-knock warrant was valid. In Davis, 144 Md. App. at 149, 797 A.2d at 87-88, law enforcement officers applied for a no-knock warrant to search an

apartment, alleging that the defendant was storing marijuana in the apartment, and that, based on the law enforcement officers' experience and training, they believed that they were likely to encounter guns in the apartment. In upholding the validity of the no-knock warrant, the Court of Special Appeals quoted its statement in Dashiell, 143 Md. App. at 153, 792 A.2d at 1196, that "[p]ersons associated with the drug business are prone to carrying weapons." Davis, 144 Md. App. at 154, 797 A.2d at 90-91.

In Burns v. State, 149 Md. App. 526, 529, 544, 817 A.2d 885, 887, 895 (2003)— where the defendant was convicted of transporting a handgun in a vehicle, possession of cocaine, possession of drug paraphernalia, theft, and illegal possession of a regulated firearm—the Court of Special Appeals held, among other things, that there was probable cause to arrest the defendant, who was sitting on the right side of a vehicle's backseat while a handgun was underneath the front passenger seat, and thus was near the defendant's feet. In Burns, id. at 530-31, 817 A.2d at 887, a law enforcement officer initiated a traffic stop of a vehicle that had been weaving from lane to lane and been straddling lanes, and smelled a strong odor of alcohol emanating from the vehicle. The Court of Special Appeals observed that the law enforcement officer's discovery of cocaine in the vehicle's center console was evidence of the defendant's joint possession of the handgun, stating: "The intimate connection between narcotics and guns . . . is notorious." Id. at 531, 542, 817 A.2d at 888, 894.

In Hicks v. State, 189 Md. App. 112, 114, 125, 984 A.2d 246, 247, 253 (2009), a case in which the defendant was convicted of unlawful possession of a firearm, the Court of Special Appeals held that a law enforcement officer was permitted to arrest the defendant

where, during a traffic stop, the law enforcement officer attempted to frisk the defendant, who then became combative and attempted to elbow the law enforcement officer. Relying in part on its statement in Burns, 149 Md. App. at 542, 817 A.2d at 894, that "'[t]he intimate connection between narcotics and guns is notorious[,]'" the Court of Special Appeals determined that the law enforcement officer's observation of a drug transaction between the defendant and another individual justified the law enforcement officer's decision to attempt to frisk the defendant for weapons. Hicks, 189 Md. App. at 124-25, 984 A.2d at 253.

In Webster v. State, 221 Md. App. 100, 105, 107, 114-15, 108 A.3d 480, 483, 484, 488 (2015)—where the defendant was convicted of various drug offenses and other crimes—the Court of Special Appeals held, among other things, that a trial court did not abuse its discretion in admitting into evidence a notebook that contained drawings of guns, calculations of grams, and lists of drug addicts who were willing to drive drug dealers around. The Court of Special Appeals determined that, as to the drawings of guns in the notebook, the danger of unfair prejudice did not substantially outweigh the probative value, stating: "'[T]here can be no serious dispute that there is an intimate relationship between violence and drugs.'" Id. at 114, 108 A.3d at 488 (citation omitted). The Court of Special Appeals also quoted Burns, 149 Md. App. at 542, 817 A.2d at 894, stating: "'The intimate connection between guns and narcotics is notorious[.]'" Webster, 221 Md. App. at 114, 108 A.3d at 488.

In Chase v. State, 224 Md. App. 631, 635, 649, 121 A.3d 257, 259, 267 (2015), aff'd, 449 Md. 283, 144 A.3d 630 (2016), in which the defendant was convicted of

possession of cocaine with the intent to distribute, the Court of Special Appeals held that a law enforcement officer had reasonable articulable suspicion to believe that the defendant was armed and dangerous, and thus was justified in frisking the defendant for weapons, where the defendant and another individual were in a vehicle that was parked in an area with high drug activity, and the defendant and the other individual made furtive movements as law enforcement officers approached the vehicle. In determining that there was reasonable articulable suspicion, the Court of Special Appeals quoted Dashiell, 143 Md. App. at 153, 792 A.2d at 1196: "'Persons associated with the drug business are prone to carrying weapons[.]'" Chase, 224 Md. App. at 647, 121 A.3d at 266.

### Search of a Vehicle's Occupants

It is well settled that a law enforcement officer must have probable cause to conduct a warrantless search of an occupant of a vehicle. See State v. Wallace, 372 Md. 137, 149, 812 A.2d 291, 298 (2002). In Wallace, id. at 155-56, 812 A.2d at 302, this Court held that a law enforcement officer lacked probable cause to conduct a warrantless search of a defendant where a narcotics dog alerted to the presence of drugs in a vehicle in which the defendant was a passenger. The law enforcement officer initiated a traffic stop of a vehicle that had been speeding and had run a red light. See id. at 141, 812 A.2d at 294. The vehicle was occupied by a driver and four passengers: one in the front seat, and three, including the defendant, in the backseat. See id. at 141, 812 A.2d at 294. A narcotics dog alerted to the presence of drugs in the vehicle. See id. at 142, 812 A.2d at 294. A law enforcement officer searched multiple occupants of the vehicle, including the defendant. See id. at 142, 812 A.2d at 294. The law enforcement officer testified that he was not simply frisking the

vehicle's occupants; instead, he was searching for anything suspicious, whether a weapon or otherwise. See id. at 142-43, 812 A.2d at 294. The law enforcement officer felt a hard object near the defendant's groin; the law enforcement officer could tell that it was not a gun, knife, or other weapon. See id. at 143, 812 A.2d at 294-95. The law enforcement officer handcuffed the defendant and led him to a spot away from the road to complete the search. See id. at 143, 812 A.2d at 295. As they walked, the defendant moved his hips in an apparent attempt to shake the object loose. See id. at 143, 812 A.2d at 295. The law enforcement officer felt the area of the defendant's groin again, and could no longer feel the object. See id. at 143, 812 A.2d at 295. The law enforcement officer saw something protruding from the defendant's left pant leg; the law enforcement officer seized it and discovered that it was a clear plastic baggie containing cocaine. See id. at 143, 812 A.2d at 295.

This Court acknowledged that a narcotics dog's alert to the presence of drugs in a vehicle constitutes probable cause to believe that there is contraband in the vehicle or on one of the vehicle's occupants; however, this Court held that a narcotics dog's alert, without additional circumstances, does not constitute probable cause to search every one of the vehicle's occupants. See id. at 155-56, 812 A.2d at 302. This Court explained that, to establish probable cause to search a vehicle's passenger, "some link between the passenger and the crime must exist[,] or probable cause generally will not be found." Id. at 156, 812 A.2d at 303. This Court observed that, in Wallace, the only basis for searching the defendant was a "general canine scan of the car[.]" Id. at 156, 812 A.2d at 303. This Court determined that there was no probable cause that was "specific to" the defendant; for

example, the narcotics dog had not sniffed and alerted to the defendant in particular. Id. at 156, 159, 812 A.2d at 302, 304. Additionally, none of the passengers behaved suspiciously; no drugs were visible in the vehicle; and there was no odor of drugs emanating from the vehicle. See id. at 159, 812 A.2d at 304. This Court further observed that a vehicle's passenger "is generally not perceived to have the kind of control over the contents of the vehicle as does a driver"; additionally, under Maryland law, there is a "distinction between drivers and owners and passengers of vehicles." Id. at 158-59, 812 A.2d at 304. This Court summarized its holding as follows: "A canine alert on the exterior of a vehicle does not support the proposition that the drugs potentially in the car are concealed on a *particular* occupant of that vehicle." Id. at 159, 812 A.2d at 304 (emphasis in original).

In Wallace, 372 Md. at 155, 812 A.2d at 302, this Court expressly relied on, among other cases, Pringle v. State, 370 Md. 525, 530-31, 805 A.2d 1016, 1019 (2002), rev'd, 540 U.S. 366 (2003), in which this Court held that a law enforcement officer lacked probable cause to arrest a vehicle's front seat passenger where money was found in the glove compartment, and drugs were found in the backseat's armrest. After this Court decided Wallace in 2002, the Supreme Court reversed this Court's judgment in Pringle in 2003. See Pringle, 540 U.S. at 374.

In Pringle, id. at 368, a law enforcement officer initiated a traffic stop of a vehicle that had been speeding. The vehicle contained a driver, a front seat passenger, and a backseat passenger. See id. The law enforcement officer asked the driver for his license and registration; when the driver opened the glove compartment, the law enforcement

officer saw a large amount of rolled-up cash inside. See id. The law enforcement officer asked the driver whether he had any weapons or drugs in the vehicle, and the driver indicated that he did not. See id. The driver consented to a search of the vehicle, and the law enforcement officer seized $763 in cash from the glove compartment and five plastic baggies containing cocaine from behind the backseat's armrest. See id. The vehicle's three occupants were asked who owned the cash and drugs; none of the vehicle's three occupants offered any information about ownership of the cash and drugs. See id. at 368-69.

The Supreme Court observed that, upon discovering the cocaine, the law enforcement officer had probable cause to believe that a felony—namely, drug possession—had been committed; the question was whether the law enforcement officer had probable cause to believe that the defendant had committed that felony. See id. at 370. The Supreme Court concluded that the facts gave rise to a reasonable inference that "any or all three of the [vehicle's] occupants had knowledge of, and exercised dominion and control over, the cocaine." Id. at 372. Accordingly, the Supreme Court held that the law enforcement officer had probable cause to believe that the defendant had "committed the crime of possession of cocaine, either solely or jointly." Id. The Supreme Court stated that a vehicle's passenger "will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing." Id. at 373. The Supreme Court determined that, in Pringle, it was reasonable to infer a common enterprise among the vehicle's occupants because the quantity of cash and cocaine "indicated the likelihood of drug dealing, an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him [or

- 27 -

her]." Id.

In Stokeling, 189 Md. App. at 674 n.9, 985 A.2d at 187 n.9, the Court of Special Appeals stated that, in light of the circumstances that this Court relied on its own opinion in Pringle in deciding Wallace, and that the Supreme Court reversed this Court's judgment in Pringle, "[t]he continued vitality of *Wallace* is questionable[.]"

**Cases from Other Jurisdictions**

Courts in other jurisdictions have addressed whether the odor of marijuana emanating from a vehicle or the suspected presence of drugs in a vehicle gives rise to reasonable articulable suspicion that the vehicle's occupants are armed and dangerous, and thus the ability to conduct a frisk.

In Sakyi, 160 F.3d 164, 165-66, 170 (4th Cir. 1998), the United States Court of Appeals for the Fourth Circuit held that a law enforcement officer had reasonable articulable suspicion that a defendant was armed and dangerous where the law enforcement officer observed a Phillies Blunt cigar box in the glove compartment of a vehicle in which the defendant was a passenger. The law enforcement officer had observed the vehicle on the George Washington Memorial Parkway, and observed that one of the vehicle's brake lights was not functioning. See id. at 165. The law enforcement officer stopped the vehicle and asked for the driver's license and registration; the driver responded that he did not have his license with him. See id. When the driver opened the glove box to obtain the vehicle's registration, the law enforcement officer observed a Phillies Blunt cigar box. See id. at 165-66. The law enforcement officer testified that, almost all of the hundreds of times that he had encountered boxes of Phillies Blunt cigars—which are often used to roll marijuana

cigarettes—there had been evidence of marijuana. See id. at 166. Upon further questioning, the driver advised that he had never had a license. See id. The law enforcement officer testified that he suspected that the driver's license had been suspended. See id. The law enforcement officer asked the defendant, who was a passenger in the vehicle, for identification, and he, too, claimed that he did not have his license with him. See id.

The law enforcement officer requested a check on the driver's license through the Park Police communications and asked the driver to wait at the rear of the vehicle while the officer obtained the information. See id. While waiting, the law enforcement officer asked the driver if he had anything illegal in the vehicle; the driver responded in the negative and consented to a search of the vehicle. See id. The Park Police communications revealed that the driver's license had, indeed, been revoked; and, the driver was placed under arrest. See id. Before searching the vehicle, the law enforcement officer frisked the defendant, and a piece of tin foil, containing a substance the officer believed to be crack cocaine, fell to the ground. See id. The law enforcement officer arrested the defendant. See id. A subsequent search of the vehicle revealed a rifle. See id.

At the suppression hearing, the law enforcement officer testified that he frisked the defendant because he was going to search the vehicle, and that he frisked the defendant for his protection. See id. The law enforcement officer acknowledged that, prior to frisking the defendant, he had no reason to believe that the defendant had committed a crime. See id. Further, the law enforcement officer testified that he did not observe any bulges in the defendant's clothing and that nothing that the defendant did caused him to fear for his

safety.  See id.  The law enforcement officer and another officer testified, however, that the area of the stop on the George Washington Memorial Parkway was a high-crime area.  See id.

The Fourth Circuit held that, where a law enforcement officer initiates a lawful traffic stop of a vehicle and has reasonable suspicion to believe that the vehicle contains drugs, the law enforcement officer may frisk the vehicle's occupants.  See id. at 169.  The Fourth Circuit relied on a line of Supreme Court cases that permit law enforcement officers to order the driver and any passengers out of a vehicle during a traffic stop with no more suspicion than that which was necessary for the stop itself.  See id. at 167-68.  According to the Fourth Circuit, these cases recognize that a traffic stop poses a risk to the safety of law enforcement officers.  See id. at 168.  The Fourth Circuit specifically held

> that in connection with a lawful traffic stop of an automobile, when the officer has a reasonable suspicion that illegal drugs are in the vehicle, the officer may, in the absence of factors allaying his safety concerns, order the occupants out of the vehicle and pat them down briefly for weapons to ensure the officer's safety and the safety of others.

Id. at 169.  With respect to the case before it, the Fourth Circuit stated that the law enforcement officer had a reasonable suspicion, based on his experience with Phillies Blunt cigar boxes, that drugs were present in the vehicle, but the law enforcement officer could not attribute the drugs to the driver alone because the cigar box was located in the glove box.  See id. The Fourth Circuit then observed: "The indisputable nexus between drugs and guns presumptively creates a reasonable suspicion of danger to the officer."  Id.  The Fourth Circuit specifically concluded that additional circumstances existed that did not allay the law enforcement officer's suspicion and apprehension, but rather heightened them.  See id.

- 30 -

The Fourth Circuit identified the following circumstances that heightened the law enforcement officer's suspicion and apprehension: neither the defendant nor the driver could produce identification; the driver lied about the status of his license; the stop occurred in a high-crime area known for drugs and guns; and, the law enforcement officer could not ascertain whether the defendant was armed because the defendant was wearing loose clothing. See id.

In United States v. Rooks, 596 F.3d 204, 207, 210 (4th Cir. 2010), a case in which the defendant, the front seat passenger, fled during a traffic stop, during which a law enforcement officer detected the odor of marijuana and viewed what he suspected to be a marijuana cigarette in the vehicle's ashtray, the Fourth Circuit held that the law enforcement officer's actions in ordering the defendant to exit the vehicle for a frisk did not violate the Fourth Amendment. The Fourth Circuit noted that, under Sakyi, 160 F.3d at 169, "an officer who has reasonable suspicion to believe that a vehicle contains illegal drugs may order its occupants out of the vehicle and pat them down for weapons." Rooks, 596 F.3d at 210. The Fourth Circuit stated that, because the law enforcement officer detected marijuana in the vehicle, the officer was authorized to frisk for weapons. See id.

In Leach v. State, 957 So. 2d 717, 721-22 (Fla. Dist. Ct. App. 2007), the Fifth District Court of Appeal of Florida held that a law enforcement officer had a reasonable basis to frisk a defendant where, among other circumstances, a narcotics dog alerted to the location in a vehicle in which the defendant had been sitting. In Leach, id. at 718, a law enforcement officer initiated a traffic stop of a vehicle that had been speeding. As the law enforcement officer approached the vehicle, he noticed movement in the rear of the vehicle;

- 31 -

however, because the vehicle's windows were heavily tinted, the law enforcement officer was uncertain whether the defendant, who was the driver, was moving. See id. All four of the vehicle's occupants appeared uneasy. See id. The law enforcement officer called for backup, and was joined by another law enforcement officer. See id. The first law enforcement officer ordered the vehicle's occupants to exit the vehicle, and had a narcotics dog scan the vehicle; the narcotics dog alerted to the vehicle's driver's door handle and the front passenger's door handle. See id. The law enforcement officer frisked each of the vehicle's occupants; the law enforcement officer testified that he was concerned about the officers' safety because there were four occupants of the vehicle and only two officers, and because weapons were often involved in narcotics arrests. See id. While frisking the defendant, the law enforcement officer discovered marijuana, pills, and drug paraphernalia. See id. The Fifth District Court of Appeal of Florida concluded that there was a reasonable basis to frisk the defendant, in light of the narcotics dog's alert to the vehicle's driver's door, the vehicle's occupants' uneasy appearance, their movements inside the vehicle, the law enforcement officer's knowledge that drugs are often associated with guns, and the presence of only two law enforcement officers, compared to four occupants of the vehicle. See id. at 721-22.

In People v. Collier, 166 Cal. App. 4th 1374, 1376, 1378 (2008), the Second District Court of Appeal of California held that a law enforcement officer had reasonable suspicion to frisk the defendant, who was the front seat passenger of a vehicle from which an odor of marijuana was emanating. The defendant was wearing baggy shorts that hung down to his ankles and an untucked shirt that hung down to the middle of his legs. See id. at 1376.

The law enforcement officer suspected that the defendant was concealing a weapon in his baggy clothing. See id. The Second District Court of Appeal of California concluded that the "trial court correctly and reasonably ruled that there were specific and articulable facts to conduct a limited pat down based on officer safety and the presence of drugs[,]" and thereafter observed that the Fourth Circuit stated in Sakyi, 160 F.3d at 169:

> [I]n connection with a lawful traffic stop of an automobile, when the officer has a reasonable suspicion that illegal drugs are in the vehicle, the officer may, in the absence of factors allaying his safety concerns, order the occupants out of the vehicle and pat them down briefly for weapons to ensure the officer's safety and the safety of others.

Collier, 166 Cal. App. 4th at 1378 (alteration in original). The Second District Court of Appeal of California determined that the frisk was "reasonably necessary" because the law enforcement officer "was concerned about his safety based on [the defendant]'s size, the baggy clothing, and the knowledge that [the defendant] or the driver may have been smoking marijuana." Id.

In Patterson v. State, 958 N.E.2d 478, 485-87 (Ind. Ct. App. 2011), the Court of Appeals of Indiana held that a law enforcement officer had reasonable articulable suspicion that a defendant was armed and dangerous where the law enforcement officer initiated a traffic stop of a vehicle that the defendant had been driving, and from which an odor of marijuana was emanating. The Court stated:

> A generalized suspicion that an individual presents a threat to an officer's safety is insufficient to authorize a pat-down search; rather, there must exist articulable facts to support an officer's reasonable belief that the particular individual is armed and dangerous. In determining whether an officer acted reasonably under the circumstances, we consider the specific, reasonable inferences that the officer is entitled to draw from the facts in light of his or her experience.

- 33 -

Id. at 486 (citations omitted). The Court concluded that the frisk of the defendant was justified by a reasonable concern for officer safety because the traffic stop occurred late at night in a high-crime area that was known for drug activity and gun violence, the law enforcement officer detected the odor of burnt marijuana emanating from the vehicle, and the law enforcement officer testified that she conducted the frisk based in part on her belief that "guns go hand in hand with drugs." Id. at 487. The Court specifically stated that, "[w]hile any of these factors standing alone might have been insufficient, in conjunction, they support[ed] a reasonable belief that [the defendant] was armed." Id.

### Robinson v. State

In Robinson, 2017 WL 244093 at *2, this Court consolidated three cases, in each of which a law enforcement officer detected a strong or overwhelming odor of marijuana emanating from a vehicle that the defendant possessed or had been using, then searched the vehicle. In one case, the defendant was leaning against the vehicle; in another case, the defendant was in the driver's seat of the vehicle, which was stopped in front of a stop sign; and, in the third case, the defendant was sitting in the front passenger seat with the door open. See id. at *3-4. The law enforcement officers searched the vehicles and found marijuana and/or other contraband. See id. at *3-5 & n.3.

On appeal, the defendants argued that, because the General Assembly had recently decriminalized possession of less than ten grams of marijuana, a law enforcement officer lacked probable cause to search a vehicle based on an odor of marijuana emanating from the vehicle. See id. at *2. This Court disagreed, and held

that a law enforcement officer has probable cause to search a vehicle where the law enforcement officer detects an odor of marijuana emanating from the vehicle, as marijuana in any amount remains contraband, notwithstanding the decriminalization of possession of less than ten grams of marijuana; and the odor of marijuana gives rise to probable cause to believe that the vehicle contains contraband or evidence of a crime.

Id. This Court explained that decriminalization is not the same as legalization, and that possession of marijuana in any amount remains illegal in Maryland. See id. at *14. This Court stated that, "[a]lthough not dispositive of whether a law enforcement officer may search a vehicle upon detection of the odor of marijuana, we observe that the relevant statutes' plain language and legislative history support the conclusion that the General Assembly did not intend to preclude a search of a vehicle based on the odor of marijuana." Id. at *15. In an independent review of the issue, this Court concluded that the Fourth Amendment permits a search of a vehicle based on an odor of marijuana, as "probable cause to search exists where a person of reasonable caution would believe that contraband or evidence of a crime is present[,]" and "'contraband' means goods that are illegal to possess, regardless of whether possession of the goods is a crime." Id. at *16 (citation, emphasis, and some internal quotation marks omitted). Accordingly, this Court concluded, despite the decriminalization of possession of less than ten grams of marijuana, marijuana remains contraband, and its odor constitutes probable cause to search a vehicle. See id. at *17. In so holding, this Court joined the Court of Special Appeals and the majority of courts in other jurisdictions that have addressed the issue. See id. at *11, 17.

This Court determined that, "separate from the odor of marijuana providing probable cause to believe that a vehicle contains contraband, the odor of marijuana

- 35 -

provides probable cause to believe that a vehicle contains evidence of a crime." Id. at *18.

This Court explained:

> Despite the decriminalization of possession of less than ten grams of marijuana, the odor of marijuana remains evidence of a crime. The odor of marijuana emanating from a vehicle may be just as indicative of crimes such as the possession of more than ten grams of marijuana, possession of marijuana with the intent to distribute, or the operation of a vehicle under the influence of a controlled dangerous substance, as it is of possession of less than ten grams of marijuana. As explained above, it is unreasonable to expect law enforcement officers to determine, based on odor alone, the difference between 9.99 grams or less of marijuana and 10 grams of marijuana. In short, possession of ten grams or more of marijuana, crimes involving the distribution of marijuana, and driving under the influence of a controlled dangerous substance have not been decriminalized in Maryland, and, thus, the odor of marijuana emanating from a vehicle provides probable cause to believe that the vehicle contains evidence of a crime, and a law enforcement officer may search the vehicle under such circumstances.

Id.

**Analysis**

As a threshold matter, we observe that, although each party contends that our recent decision in Robinson, 2017 WL 244093, supports its position, in our view, Robinson is not determinative of the issue at hand. Norman argues that Robinson stands for the proposition that, because a law enforcement officer cannot distinguish between a criminal and noncriminal amount of marijuana based on odor alone, an odor of marijuana, without more, does not give rise to a reasonable suspicion that a vehicle contains large quantities of marijuana consistent with distribution or any other crime. According to Norman, because the odor of marijuana emanating from a vehicle may be indicative of the presence of less than ten grams of marijuana, an alleged connection between drugs and guns does not support reasonable suspicion to believe that an occupant of the vehicle is armed and

dangerous.  The State asserts that, under <u>Robinson</u>, the mere odor of marijuana gives rise

to a reasonable inference that a vehicle's occupants are engaged in drug dealing—and,

therefore, by extension, that the vehicle's occupants are armed and dangerous.

Neither Norman's nor the State's interpretation of <u>Robinson</u> is applicable.  It is

correct that, in <u>Robinson</u>, <u>id.</u> at *17, this Court concluded that law enforcement officers are

unable to differentiate between a criminal amount (ten grams or more) and a non-criminal

amount (less than ten grams) of marijuana based on the odor of marijuana.  Norman takes

out of context the significance of this Court's statement that the odor of marijuana may be

indicative of possession of less than ten grams of marijuana.  This Court made the statement

in the context of holding that an odor of marijuana gives rise to probable cause to search a

vehicle, and for purposes of probable cause to search a vehicle there is no distinction

between the presence of more than ten grams of marijuana and less than ten grams of

marijuana in the vehicle.  This Court explained:

> [M]arijuana in any amount, no matter how small, is contraband; accordingly,
> the odor of marijuana constitutes probable cause to search a vehicle.  In other
> words, for purposes of probable cause, there is no distinction between the
> significance of a criminal amount of marijuana versus the significance of a
> noncriminal—but still illegal—amount of marijuana. . . . [R]equiring that law
> enforcement officers detect a strong or overwhelming odor of marijuana to
> have probable cause to conduct a warrantless search a vehicle would serve
> no useful purpose.

<u>Id.</u>  Furthermore, at the risk of stating the obvious, <u>Robinson</u> in no way addressed whether

the odor of marijuana gives rise to reasonable articulable suspicion to frisk.  Additionally,

the Court's conclusion in <u>Robinson</u>—that an "odor of marijuana emanating from a vehicle

may be just as indicative of crimes such as the possession of more than ten grams of

marijuana, possession of marijuana with the intent to distribute, or the operation of a vehicle under the influence of a controlled dangerous substance, as it is of possession of less than ten grams of marijuana[,]" id. at *18—does not support Norman's contention that because, under Robinson, an odor of marijuana emanating from a vehicle is equally consistent with the vehicle containing less than ten grams of marijuana as it is with the vehicle containing ten or more grams of marijuana, law enforcement officers have no grounds for reasonable suspicion that the vehicle's occupants are armed and dangerous. We do not endorse the view that this Court's holding in Robinson leads to the conclusion that an odor of marijuana emanating from a vehicle does not indicate that the occupants of the vehicle are armed and dangerous because the odor of marijuana may be consistent with the possession of less than ten grams of marijuana, which is a civil offense.

At the same time, however, Robinson does not stand for the proposition that the odor of marijuana alone emanating from a vehicle gives rise to reasonable articulable suspicion that every occupant of a vehicle is armed and dangerous. In contrast to Norman's reading of Robinson, the State expands Robinson's holding to argue that it enables a law enforcement officer to conclude that, based solely on the odor of marijuana emanating from a vehicle, it is reasonable to believe that all of the vehicle's occupants are armed and dangerous, and thus subject to frisk. Simply put, the only issue in Robinson was whether an odor of marijuana emanating from a vehicle provides probable cause to search the vehicle. No frisks or searches of persons were at issue in Robinson, and nowhere in Robinson did this Court imply, one way or the other, whether a frisk of a person would be permissible based on an odor of marijuana alone emanating from a vehicle.

Nowhere in Robinson did this Court mention guns, much less address the circumstances under which a law enforcement officer may reasonably infer that a vehicle's occupant possesses a gun. The State reads too much into Robinson to rely on it for the proposition that an odor of marijuana emanating from a vehicle with multiple passengers, without more, gives rise to reasonable articulable suspicion that each of the vehicle's passengers is armed and dangerous and therefore subject to frisk. We do not find the invocation of Robinson persuasive as the basis for resolving this case one way or the other.

Upon careful consideration of relevant case law, including cases from this Court, the Court of Special Appeals, and courts from other jurisdictions, we reaffirm the basic principle that, for a law enforcement officer to frisk, *i.e.*, pat down, an individual, there must be reasonable articulable suspicion that the individual is armed and dangerous, even where a law enforcement officer detects the odor of marijuana emanating from a vehicle. We hold that, where an odor of marijuana emanates from a vehicle with multiple occupants, a law enforcement officer may frisk an occupant of the vehicle if an additional circumstance or circumstances give rise to reasonable articulable suspicion that the occupant is armed and dangerous. Stated otherwise, for a law enforcement officer to have reasonable articulable suspicion to frisk one of multiple occupants of a vehicle from which an odor of marijuana is emanating, the totality of circumstances must indicate that the occupant in question is armed and dangerous. An odor of marijuana alone emanating from a vehicle with multiple occupants does not give rise to reasonable articulable suspicion that the vehicle's occupants are armed and dangerous and subject to frisk.

This Court's holding in Wallace, 372 Md. at 141, 145 n.2, 812 A.2d at 293-94, 296

n.2, a case involving a search and a narcotics dog's alert, is instructive in this case. In Wallace, id. at 156, 812 A.2d at 302, this Court held that a narcotics dog's alert to a vehicle in which the defendant was a backseat passenger did not establish probable cause to search the defendant, as there were no circumstances that would justify a search that were "specific to" the defendant—for example, the narcotics dog did not sniff and alert to the defendant's person, as opposed to the vehicle. This Court explained: "Without additional facts that would tend to establish [the defendant]'s knowledge and dominion or control over the contraband before his search, the K-9 sniff of the car was insufficient to establish probable cause for a search of a non-owner, non-driver for possession." Id. at 156, 812 A.2d at 302.

Just as a narcotics dog's alert to the presence of drugs in a vehicle with multiple occupants, alone, was insufficient to establish probable cause for a search of the vehicle's passengers in Wallace, an odor of marijuana emanating from a vehicle with multiple occupants, alone, is insufficient to establish reasonable articulable suspicion that the vehicle's occupants are armed and dangerous and therefore subject to frisk. In Wallace, there were no circumstances that indicated that the defendant possessed drugs or was engaged in drug dealing; and, in this case, there are no circumstances that led to the conclusion that Norman was armed and dangerous. By way of example, in both Wallace and in this case, there was no other circumstance present to establish probable cause or reasonable articulable suspicion other than the alert of the narcotics dog or the odor of marijuana emanating from the vehicle.

We readily acknowledge that, unlike in this case, Wallace, 372 Md. at 145 n.2, 812

- 40 -

A.2d at 296 n.2, involved a search rather than a frisk. Thus, in Wallace, the applicable standard was probable cause rather than reasonable articulable suspicion. Nonetheless, Wallace is instructive because both Wallace and this case involve applications of a defendant's Fourth Amendment rights "to be secure in their person[], . . . against unreasonable searches[.]" U.S. Const. amend. IV. A person's right to be secure in their person can be violated by either an unreasonable search or an unreasonable frisk. See Terry v. Ohio, 392 U.S. 1, 26 (1968) (A frisk "constitutes a brief, though far from inconsiderable, intrusion upon the sanctity of the person."). Indeed, in Terry, id. at 16-17, the Supreme Court stated:

> And it is nothing less than sheer torture of the English language to suggest that a careful exploration of the outer surfaces of a person's clothing all over his or her body in an attempt to find weapons is not a 'search[.]' Moreover, it is simply fantastic to urge that such a procedure performed in public by a policeman while the citizen stands helpless, perhaps facing a wall with his hands raised, is a 'petty indignity.' It is a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment, and it is not to be undertaken lightly.

(Footnotes omitted). Wallace demonstrates that, in determining whether a law enforcement officer may intrude on the sanctity of a defendant's person based on the belief that the defendant possessed drugs in a vehicle with multiple occupants, a court must focus on the circumstances—or the lack of circumstances—that involve the defendant.

Wallace remains good law, and has not been vitiated by Pringle, 540 U.S. at 371-72, 374, in which the Supreme Court held that a law enforcement officer had probable cause to arrest a defendant after cocaine and cash were found in a vehicle in which the defendant had been a passenger. Pringle did not involve a search or frisk of a person. In

Pringle, id. at 371-72, the issue was whether there was probable cause to arrest a vehicle's front seat passenger, who was within arm's reach of not only a wad of $763 in cash in the glove compartment, but also bags of cocaine behind the backseat armrest. In other words, in Pringle, the precise location of incriminating evidence—namely, cash and cocaine—was known, and the question was whether that constituted evidence of the front seat passenger's possession of contraband.

By contrast, in Wallace—and in this case, for that matter—the issue was whether a law enforcement officer was permitted to search or frisk a vehicle's passenger at a point when the vehicle had not been searched, and no contraband had been found. In Wallace, 372 Md. at 142, 812 A.2d at 294, the only circumstance that indicated that the vehicle contained contraband was a narcotics dog's alerts to the front and rear seam of the driver's side front door of the vehicle. Indeed, in Wallace, id. at 142, 812 A.2d at 294, a law enforcement officer testified that, "because of various factors, i.e., air currents in the vehicle, there is little correlation between where a canine alerts and where drugs are found in the vehicle; rather it is just a general alert to the whole of the passenger compartment of the car itself." Similarly, here, the only circumstance that indicated that the vehicle possibly contained contraband was an odor of marijuana emanating from a vehicle. In contrast to Pringle, 540 U.S. at 368-69, where the precise location of the incriminating evidence (cash and cocaine) had been established as being within the defendant's reach, in neither Wallace nor this case was the precise location of contraband known. The Supreme Court's probable cause analysis in Pringle, 540 U.S. at 372, was that the discovery of $763 in cash in a glove compartment and five plastic baggies containing cocaine behind a

backseat's armrest gave rise to probable cause to believe that any or all of the vehicle's occupants exercised control over the cocaine. In <u>Pringle</u>, the Supreme Court was not, however, confronted with the question of whether it may be concluded that a vehicle's occupants are involved in drug dealing based solely on a narcotics dog's alert, or whether evidence that a vehicle's occupants are involved in drug dealing leads to the conclusion that the vehicle's occupants are armed and dangerous.

Given the distinctions between <u>Pringle</u> on the one hand and <u>Wallace</u> and this case on the other hand, <u>Pringle</u> has not undermined <u>Wallace</u>, and <u>Pringle</u> is not dispositive of this case. We disagree with the Court of Special Appeals's remark in <u>Stokeling</u>, 189 Md. App. at 674 n.9, 985 A.2d at 187 n.9, that <u>Pringle</u> casts doubt on <u>Wallace</u>'s status as good law. Similarly, we are unpersuaded by the State's reliance on <u>Pringle</u> for the contention that, based only on the odor of marijuana emanating from the vehicle, it was reasonable for Trooper Dancho to infer that all of the vehicle's passengers were engaged in the common enterprise of drug dealing, and, by extension, were armed and dangerous. In contrast to <u>Pringle</u>, here, there was not any evidence establishing the location of marijuana in the vehicle, *i.e.*, the source of the odor of marijuana, or that Norman had dominion and control over any marijuana in the vehicle. In <u>Pringle</u>, 540 U.S. at 372, with the location of the drugs known to be the backseat's armrest, the Supreme Court concluded that it was "an entirely reasonable inference from the[] facts that any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine." The Supreme Court further determined: "Thus, a reasonable officer could conclude that there was probable cause to believe [the defendant] committed the crime of possession of cocaine, either solely

- 43 -

or jointly." Id. at 372. The same could not be said with respect to reasonable articulable suspicion in this case.

We decline to accept the State's invitation to hold that, based on Stokeling, 189 Md. App. at 667, 985 A.2d at 183, the odor of marijuana alone emanating from a vehicle with multiple occupants provides reasonable articulable suspicion to frisk each of the vehicle's occupants. To be sure, in Stokeling, id. at 667, 985 A.2d at 183, the Court of Special Appeals stated:

> [W]hen a certified K-9 alerts to the presence of narcotics in a vehicle in which there is more than one occupant, there is at least reasonable, articulable suspicion to believe that the occupants of the vehicle are engaged in a joint enterprise and together are in possession of narcotics. That conclusion logically follows the Supreme Court's probable cause analysis in *Pringle*.

Significantly, the Court of Special Appeals also stated:

> Finally, as we have noted, when the [defendant] was inside the stopped Chrysler, [the law enforcement officer] noticed that he was "shaking" and was experiencing "rapid breathing" and that he and the driver both were "very nervous." The [defendant] continued to shake and act nervously after exiting the vehicle and, when asked why by [the law enforcement officer], gave an answer that made no sense. (He replied that "it was cold out," even though it was a hot summer night.) Although the Court of Appeals has cautioned against using nervousness as a factor in probable cause or reasonable, articulable suspicion analysis, nevertheless, in this case, when there was a K-9 alert to the presence of drugs, it is entitled to at least some weight.

Stokeling, 189 Md. App. at 667-68, 985 A.2d at 183-84 (citation omitted). A careful reading of the Court of Special Appeals's opinion in Stokeling, id. at 668, 985 A.2d at 184, demonstrates that there were multiple factors that contributed to its conclusion that the law enforcement officer had reasonable articulable suspicion to frisk the defendant. Indeed, immediately after stating that a narcotics dog's alert provides reasonable articulable

- 44 -

suspicion to believe that the occupants of a vehicle are engaged in a joint enterprise and

jointly in possession of drugs, and that a connection exists between guns and drugs, the

Court of Special Appeals discussed traditional factors that contribute to the establishment

of reasonable articulable suspicion to believe that a defendant is armed and dangerous. Id.

at 666-68, 985 A.2d at 183-84. After discussing the concept of a joint enterprise and joint

possession, a connection between guns and drugs, and traditional factors involving

reasonable articulable suspicion, the Court of Special Appeals summarized its holding by

stating: "For these reasons, [the law enforcement officer] was justified in frisking [the

defendant] for weapons[.]" Id. at 668, 985 A.2d at 184. Clearly, the Court of Special

Appeals's determination encompassed more than the notion that the occupants of the

vehicle were engaged in a joint enterprise and therefore armed and dangerous.[5]

---

[5]Insofar as the cases discussed above are concerned in which the Court of Special Appeals has commented on an association between drugs and guns, a review of those cases reveals that the Court of Special Appeals has not addressed the issue of whether reasonable articulable suspicion exists to frisk an occupant of a vehicle based solely on an odor of marijuana emanating from the vehicle. In five of the seven cases, there was no issue with respect to reasonable articulable suspicion to frisk. See Banks, 84 Md. App. at 583-85, 581 A.2d at 440-41; Whiting, 125 Md. App. at 405, 410, 725 A.2d at 624, 626-27; Davis, 144 Md. App. at 148, 155-56, 797 A.2d at 86, 91-92; Burns, 149 Md. App. at 529, 544, 817 A.2d at 887, 895; Webster, 221 Md. App. at 107, 114-15, 108 A.3d at 483, 484, 488. In Hicks, 189 Md. App. at 125, 984 A.2d at 253, the Court of Special Appeals concluded that the law enforcement officer "would have been justified in patting down the [defendant] before he spoke to him about the apparent drug transaction that [the officer] had just witnessed[,]" but noted that, in that case, the defendant assaulted the law enforcement officer and attempted to flee before the law enforcement officer attempted to frisk the defendant. And, in Chase, 224 Md. App. at 635, 649, 121 A.3d at 259, 267, the Court of Special Appeals held that a law enforcement officer had reasonable articulable suspicion to believe that the defendant was armed and dangerous where the defendant and another individual were in a vehicle that was parked in an area with high drug activity, and the defendant and the other individual made furtive movements as the law enforcement officers approached the vehicle.

The Court of Special Appeals did not necessarily reach the wrong result in applying the law to Stokeling's facts. In Stokeling, id. at 667-68, 985 A.2d at 183-84, independent of the narcotics dog's alert, there was evidence providing reasonable articulable suspicion that the defendant was armed and dangerous—namely, while in the vehicle, the defendant was shaking and breathing rapidly, and thus appeared very nervous; the defendant continued to shake and act nervous after exiting vehicle; and, after the law enforcement officer asked the defendant why he was shaking, the defendant said that it was cold, even though it was a hot summer night. The behavior exhibited by the defendant in Stokeling exemplifies circumstances that contribute to reasonable articulable suspicion to frisk a defendant.

Similarly, in Leach, 957 So. 2d at 721-22, although the Fifth District Court of Appeals of Florida held that a law enforcement officer had reasonable articulable suspicion to frisk a defendant after a traffic stop and a narcotics dog alerting to the presence of drugs in the vehicle, a careful reading of the opinion demonstrates that the Court did not rely solely on the theory that the potential of drugs in the vehicle gave rise to the inference that the occupants were armed and dangerous. Rather, the Court concluded that there was a reasonable basis to frisk the defendant given the narcotics dog's alert to the driver's door, that the occupants appeared uneasy, that there had been movement inside the vehicle, and that there were two law enforcement officers present compared to four occupants of the vehicle—i.e., the law enforcement officers were outnumbered. See id. Additionally, a law enforcement officer testified that, based on his knowledge, drugs are often associated with guns. See id. at 718. The Court did not establish a blanket rule that a narcotics dog's alert

to the presence of drugs in a vehicle gives rise to reasonable articulable suspicion to frisk the vehicle's occupants; rather, the Court relied on a totality of circumstances.

We decline to follow the Fourth Circuit's lead in Sakyi, 160 F.3d at 169, and create a presumption of reasonable articulable suspicion to frisk an occupant of a vehicle with multiple occupants based on an odor of marijuana alone. In our view, with Sakyi, the Fourth Circuit did not create a blanket rule that, based on a connection between drugs and guns, a law enforcement officer may frisk an occupant of a vehicle with multiple occupants where the officer suspects the vehicle contains drugs. In Sakyi, id. at 169, the Fourth Circuit did the inverse, essentially creating a presumption of reasonable suspicion, which could be overcome by circumstances allaying a law enforcement officer's safety concerns. In reaching this conclusion, the Fourth Circuit expressly acknowledged the existence of multiple circumstances in the case that had not been removed or taken from the scenario to ameliorate the law enforcement officer's safety concerns—namely, the law enforcement officer observed a Phillies Blunt cigar box in the vehicle's glove box that the officer testified, based on his experience, was associated with marijuana; neither the driver nor the defendant had identification, although the defendant stated he did not have his license with him; the law enforcement officer suspected that the driver's license had been suspended; and, the law enforcement officer discovered that the driver's license had been revoked prior to frisking the defendant. See id. at 165-66. Sakyi is fundamentally different from this case, in which Trooper Dancho relied solely upon the odor of marijuana to establish reasonable articulable suspicion, and there were no other circumstances to heighten Trooper Dancho's suspicion or apprehension that Norman was armed and dangerous.

In sum, in Sakyi, the Fourth Circuit began with the premise that a law enforcement officer can frisk for his or her safety where, during a traffic stop, the law enforcement officer has reason to believe that drugs may be present in a vehicle, unless factors lessen the law enforcement officer's safety concerns. The Fourth Circuit arrived at such a conclusion under circumstances where there were other factors that give rise to reasonable articulable suspicion that a person may be armed and dangerous. It is clear that, in Sakyi, application of a reasonable suspicion analysis would lead to the conclusion that, based on the totality of the circumstances, there was reasonable articulable suspicion that the defendant was armed and dangerous.

Later, in Rooks, 596 F.3d at 210, the Fourth Circuit stated that, under Sakyi, reasonable articulable suspicion that a vehicle with multiple occupants contains drugs enables a law enforcement officer to frisk everyone in the vehicle. Notably, however, in Rooks, id. at 207, the defendant, who was the front seat passenger, fled during a traffic stop prior to being frisked, and a law enforcement officer detected the odor of marijuana and viewed what he suspected to be a marijuana cigarette in the vehicle's ashtray. Similarly, in Collier, 166 Cal. App. 4th at 1378, the Second District Court of Appeal of California observed that the Fourth Circuit stated in Sakyi, 160 F.3d at 169, that a reasonable suspicion that drugs are present in a vehicle permits law enforcement officers to frisk occupants of a vehicle, and held that an odor of marijuana emanating from a vehicle with multiple passengers creates reasonable articulable suspicion to frisk each of the vehicle's occupants. Importantly, in Collier, 166 Cal. App. 4th at 1378, the Second District Court of Appeal of California concluded that the frisk was "reasonably necessary," as the

- 48 -

defendant was larger than the law enforcement officer and wearing baggy clothing capable of concealing a weapon, and the law enforcement officer knew that the driver or the defendant may have been smoking marijuana.

We respectfully decline to follow Sakyi, Rooks, and Collier. In our view, the proper approach is not whether there are any circumstances that lessen a law enforcement officer's concerns about safety; instead, the appropriate analysis is whether any circumstances exist that indicate that a defendant is armed and dangerous. Simply put, where a law enforcement officer detects an odor of marijuana emanating from a vehicle with multiple occupants, and where there is no other circumstance that gives rise to reasonable articulable suspicion that a vehicle's occupant is armed and dangerous, there is no basis to frisk an occupant of the vehicle.[6]

The State brings to our attention the cases of Patterson, 958 N.E.2d at 485-87, and Lark v. State, 755 N.E.2d 1153, 1156 (Ind. Ct. App.), on reh'g, 759 N.E.2d 275 (Ind. Ct. App. 2001). But, Patterson and Lark are distinguishable from this case. Just as in the cases discussed above, in Patterson, in addition to the odor of marijuana emanating from the vehicle, there were additional circumstances that gave rise to reasonable articulable suspicion that the occupant of the vehicle was armed and dangerous. In Patterson, 958

---

[6]We are also unpersuaded by the State's citation of United States v. Knight, 562 F.3d 1314, 1319, 1327 (11th Cir. 2009), in which the Eleventh Circuit concluded that a law enforcement officer had reasonable articulable suspicion to frisk the driver of a vehicle with multiple occupants where the law enforcement officer smelled a strong odor of marijuana, saw a red cup that appeared to contain an alcoholic beverage, and, significantly, the driver argued with the officer about the traffic stop and the request to produce identification.

N.E.2d at 487, the law enforcement officer conducted a traffic stop late at night in a high-crime area, which, according to the officer, was known for drug activity and gun violence, the officer detected the odor of burnt marijuana, and, the officer specifically testified that she conducted the frisk based in part on her belief that "guns go hand in hand with drugs." In Patterson, id. at 481-82, unlike this case, the defendant was the driver of the vehicle, and there was no mention of any other occupants.

In Lark, 755 N.E.2d at 1154, law enforcement officers initially saw the defendant's vehicle stopped in the middle of a street, with a man leaning into the window on the passenger side of the vehicle. The vehicle was parked in such a manner that traffic could not pass on the street in either direction. See id. The unidentified man walked away from the vehicle when he saw the law enforcement officers' vehicle approaching. See id. According to the law enforcement officer, he decided to initiate a traffic stop, but before he could do so, the defendant drove away. See id. The law enforcement officers followed the defendant and eventually executed a traffic stop. See id. Upon stopping the vehicle, the law enforcement officer smelled a "very strong odor of burnt marijuana[,]" and, when asked to produce one, the defendant responded that he did not have a driver's license. Id. In Lark, id. at 155-56, in affirming the denial of the defendant's motion to suppress, the Court of Appeals of Indiana concluded that the law enforcement officers executed a valid traffic stop, that there was reasonable suspicion to search the vehicle based on the odor of marijuana emanating from the vehicle, and that the "search and seizure" was justified because the odor of marijuana "was sufficient to permit [the law enforcement officer] to form a reasonable suspicion that illegal activity had occurred or was about to occur."

- 50 -

In Lark, the Court of Appeals of Indiana did not specifically address whether the law enforcement officers had reasonable articulable suspicion that the defendant was armed and dangerous. Rather, the focus of the Court's analysis seemed to be whether the stop of the vehicle was permissible because it occurred blocks away from where the vehicle had been obstructing traffic. See id. at 1155-56. The circumstances under which the defendants in Patterson and Lark were frisked are obviously distinct from those in this case.[7]

To be clear, the Fourth Amendment should not be construed to require that law enforcement officers take unnecessary risks in the performance of their duties. The safety of law enforcement officers is critical in weighing Fourth Amendment considerations. With this opinion, where a stop involves the odor of marijuana alone emanating from a vehicle with multiple occupants, we conclude that a law enforcement officer must have reasonable articulable suspicion that an occupant is armed and dangerous before conducting a frisk. We reiterate the well-established principle that reasonable articulable suspicion to frisk, *i.e.*, pat down, an individual must be based on circumstances involving

---

[7]In addition to Patterson and Lark, the State brings to our attention the distinguishable case of United States v. Grissett, 925 F.2d 776, 778 (4th Cir. 1991) (per curiam), in which the Fourth Circuit held that exigent circumstances existed where law enforcement officers smelled marijuana emanating from a hotel room where the defendants were staying. The defendants "apparently concede[d]" that the law enforcement officers had probable cause to believe that the defendants were using marijuana in the hotel room, but contended that there were no exigent circumstances. Id. The Fourth Circuit explained that there were exigent circumstances—namely, the risk of destruction of evidence— because the law enforcement officers could have reasonably concluded that, after the law enforcement officers identified themselves, the defendants would attempt to dispose of the marijuana. See id. Grissett is obviously distinguishable, given that it did not involve a frisk or a search of a person, while this case involves a frisk; Grissett involved a hotel room, while this case involves a vehicle; and Grissett involved only an issue as to exigent circumstances, while this case involves only an issue as to reasonable articulable suspicion.

the individual that give rise to the belief that the individual is armed and dangerous. Indeed, reasonable articulable suspicion to frisk the defendant could have been determined based on totality of the circumstances present in Stokeling, Leach, Sakyi, Collier, Patterson, and Lark.

As the State points out, it is correct that, in Bost, 406 Md. at 360, 958 A.2d at 367, this Court quoted Sakyi, 160 F.3d at 169, in the following statement: "Guns often accompany drugs, and many courts have found an 'indisputable nexus between drugs and guns.'" In Bost, 406 Md. at 360, 958 A.2d at 367, this Court also referenced Dashiell, 143 Md. App. at 153, 792 A.2d at 1196, which is one of multiple cases in which the Court of Special Appeals has mentioned a connection between drugs and guns. See, e.g., Stokeling, 189 Md. App. at 667, 985 A.2d at 183. In Dashiell, 374 Md. at 101-02, 821 A.2d at 381-82, in evaluating whether a law enforcement officer had reasonable articulable suspicion to frisk a defendant where law enforcement officers were executing a search and seizure warrant for a residence and an individual, and the warrant application provided that weapons may be found in the residence and the individual was known to be armed and dangerous, this Court stated: "[G]uns are widely known to be used in narcotics trafficking[.]" (Footnote omitted).

This Court's reference in Bost and Dashiell, and the mention by the Court of Special Appeals in various cases, of a connection between guns and drugs does not affect our holding in this case. Dashiell, 374 Md. at 91-92, 821 A.2d at 376, involved the search of a suspected drug dealer's house pursuant to a search warrant where law enforcement officers stated in the warrant application that the individual had been seen with a handgun

and handguns had been seen at the residence.  Under these circumstances, this Court observed that weapons and guns are known to be used in drug trafficking, and that, based on witnesses having reported weapons in the house and that the individual who was the subject of the warrant had been seen with a gun, a frisk of the defendant was permissible.  See id. at 98, 101-02, 110, 821 A.2d at 380, 381-82, 387.  Similarly, in Bost, 406 Md. at 360, 958 A.2d at 367, this Court observed that guns often accompany drugs, and many courts have found a nexus between the two; but, just as in Dashiell, the circumstances of Bost were completely different from those in this case.  In Bost, 406 Md. at 359-60, 346, 958 A.2d at 367, 359, this Court concluded that the Maryland Uniform Act on Fresh pursuit authorized law enforcement officers from the District of Columbia to pursue the defendant into Maryland where the defendant fled the law enforcement officers in a high-crime, drug-trafficking area, the flight was unprovoked, and the defendant was seen clutching what was believed to be a concealed weapon as he fled.  In neither Dashiell nor Bost did this Court purport to resolve the issue of whether the odor of marijuana emanating from a vehicle gives rise to reasonable articulable suspicion that the vehicle's occupants are armed and dangerous.

Although the Court of Special Appeals has noted a connection between drugs and guns in various contexts, when addressing reasonable articulable suspicion, in describing the difference between a Terry stop and Terry frisk, recently, in Ames v. State, ___ Md. App. ___, ___ A.3d ___, 2017 WL 462240, at *6 (Md. Ct. Spec. App. Feb. 3, 2017), with Judge Charles E. Moylan, Jr. writing for the Court, the Court of Special Appeals explained:

- 53 -

The purpose of the <u>Terry</u> frisk, by diametric contrast, is not directly crime-related at all but is exclusively concerned with officer safety, with safeguarding the life and limb of the officer who is thrust into the potentially dangerous situation of conducting a <u>Terry</u> stop, perhaps in a darkened alley and perhaps at three o'clock in the morning.

. . .

Before we even turn to the qualitative assessment of the rationale being urged as a justification for the <u>Terry</u> frisk, there is first the threshold requirement that the frisking officer articulate his specific reasons for believing that the suspect was armed and dangerous. It is not enough that objective circumstances be present that might have permitted some other officer in some other case to conclude that the suspect was armed and dangerous. It is required that the frisking officer himself expressly articulate the specific reasons he had for believing that the frisk was necessary.

The perspective that a law enforcement officer must have specific reasons for believing a suspect is armed and dangerous supports the conclusion that the mere odor of marijuana emanating from vehicle with multiple occupants would not give rise to reasonable articulable suspicion that an occupant is armed and dangerous.

More importantly, simply associating guns and drugs does not resolve the issue that this case presents. An odor of marijuana emanating from a vehicle with multiple occupants means that there is probable cause to believe that marijuana is somewhere in the vehicle. However, a law enforcement officer cannot reasonably infer that a particular occupant of a vehicle is armed and dangerous just because an odor of marijuana indicates that marijuana may be somewhere in the vehicle. In other words, in addition to cases from other courts and the Court of Special Appeals being factually distinguishable, we simply do not adopt the view that the odor of marijuana alone emanating from a vehicle gives rise to the inference that a passenger in the vehicle is potentially armed and dangerous. A leap cannot

- 54 -

be made from probable cause to search a vehicle to reasonable articulable suspicion that the vehicle's occupants are armed and dangerous based solely on the odor of marijuana coming from the vehicle. A nexus between guns and drugs does not advance the analysis of reasonable articulable suspicion, where all that is known is that an odor of marijuana emanated from a vehicle.

To be sure, upon detecting an odor of marijuana emanating from a vehicle with multiple occupants, a law enforcement officer may ask all of the vehicle's occupants to exit the vehicle; call for backup if necessary; detain the vehicle's occupants for a reasonable period of time to accomplish the search of the vehicle; and search the vehicle for contraband and/or evidence of a crime. However, Terry has never been construed to authorize a routine frisk of every person in a vehicle without reasonable articulable suspicion that the person is armed and dangerous. See Sellman, 449 Md. at 545, 144 A.3d at 782. Where, in addition to the odor of marijuana, another circumstance or other circumstances are present giving rise to reasonable articulable suspicion that an occupant is armed and dangerous, a law enforcement officer may frisk an occupant of a vehicle with multiple occupants prior to searching the vehicle.

Applying our holding to this case's facts, we conclude that Trooper Dancho lacked reasonable articulable suspicion to frisk Norman. Trooper Dancho initiated a traffic stop of a vehicle with an inoperable taillight. The vehicle had three occupants: Robinson (the driver), Norman (who was the in the front passenger seat), and Braham (who was in the backseat). Trooper Dancho detected a strong odor of fresh marijuana emanating from the vehicle. Trooper Dancho ordered Robinson, Norman, and Braham to exit the vehicle.

Trooper Dancho first frisked Robinson, the driver, and did not find any weapons or drugs. Trooper Dancho then frisked Norman,[8] and found a bag of marijuana. Finally, Trooper Dancho frisked Braham, and did not find any weapons or drugs. After frisking all three of the vehicle's occupants, Trooper Dancho searched the vehicle, and found a grinder with traces of marijuana, as well as a small amount of marijuana in the dashboard's center compartment, above the gear shift. Trooper Dancho arrested and searched Norman, and found a second bag of marijuana.

Contrary to the myriad of cases discussed above, Trooper Dancho's testimony is devoid of a description of any circumstance that, prior to the frisk, gave rise to reasonable articulable suspicion that Norman was armed and dangerous; prior to the frisk, all that Trooper Dancho knew was that he detected an odor of marijuana emanating from the vehicle. For example, Trooper Dancho did not testify that Norman made furtive

---

[8]Before us, Norman does not challenge the circuit court's determination that Trooper Dancho frisked, as opposed to searched, him. Although the issue was not raised in this Court, the record demonstrates that there was evidence to support the conclusion that Trooper Dancho's frisk was, indeed, a search. On cross-examination, after being shown the report he authored concerning the traffic stop, Trooper Dancho acknowledged that he wrote that he "searched" each occupant. At the suppression hearing, Braham testified that, during Norman's frisk, the law enforcement officer was "tugging all over" Norman's body and that the officer put his hand under Norman's pants. Trooper Dancho testified that he frisked Norman and felt what seemed like "large quantities of some foreign object in [Norman's] pants[.]" According to Trooper Dancho, he felt what seemed like plastic- or cellophane-covered, individually packaged bags of drugs in Norman's pants pocket. Trooper Dancho testified that he "shook" Norman's pants pocket, and a bag of marijuana fell onto the ground. The circuit court concluded that Trooper Dancho conducted a "pat down for officer's safety and for weapons[,]" as opposed to a search, of Norman and the other occupants. Although this case's circumstances do not give confidence in the determination that Trooper Dancho conducted only a frisk for weapons and not a search of Norman, the issue of whether the circuit court correctly determined that Trooper Dancho conducted a frisk rather than a search is not before this Court.

movements, moved around inside the vehicle, or otherwise behaved suspiciously; that Norman attempted to flee; that there were any bulges in Norman's pockets; that Norman's clothing was baggy, large, or otherwise easily able to conceal a weapon; that Norman's hands were not visible; that Norman appeared nervous; that Norman provided a fake name or false identification; that Norman said something that was either false or inconsistent with something that another one of the vehicle's occupants had said; that Norman was hostile, argumentative, or otherwise uncooperative; that Norman failed to comply with Trooper Dancho's instructions; that Norman had a criminal record or was known to be violent or carry a gun; or even that the traffic stop took place in a high-crime area and/or an area that was known for drug activity or gun violence. To the contrary, Trooper Dancho testified that he "patted down [] Norman for weapons for [his] safety as [Norman] was standing as [he was] searching the vehicle." Again, we do not endorse a blanket ability to conduct frisks incident to the search of a vehicle.

Of course, the circumstances that it was nighttime at the time of the traffic stop, and that there were three people in the vehicle, are circumstances that are to be considered in assessing whether a law enforcement officer has reasonable articulable suspicion to conduct a frisk. In this case, before conducting the frisk, Trooper Dancho called for backup, and two more troopers arrived; thus, at the point that Norman was frisked, the vehicle's occupants no longer outnumbered the law enforcement officers. More importantly, Trooper Dancho did not testify that these factors caused him to believe that Norman was armed and dangerous. Simply put, at the time of the frisk, there were insufficient circumstances giving rise to reasonable articulable suspicion that Norman was

- 57 -

armed and dangerous to justify the frisk.

For these reasons, the circuit court erred in denying the motion to suppress.[9]

> **JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR SOMERSET COUNTY AND REMAND TO THAT COURT WITH INSTRUCTIONS TO GRANT THE MOTION TO SUPPRESS. SOMERSET COUNTY TO PAY COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS.**

Judge Greene joins the judgment only.

---

[9]Based on the odor of marijuana emanating from the vehicle and our recent holding in Robinson, Trooper Dancho had probable cause to search the vehicle. Accordingly, our holding in this case does not affect the admissibility of any contraband or evidence of a crime recovered from the vehicle.

Circuit Court for Somerset County
Case No.: 19-K-15-010495
Argued: February 3, 2017

IN THE COURT OF APPEALS

OF MARYLAND

No. 56

September Term, 2016

JOSEPH NORMAN, JR.

v.

STATE OF MARYLAND

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

Concurring Opinion by Adkins, J., which
Barbera, C.J., joins.

Filed: March 27, 2017

I fully respect the thorough and rigorous examination of the pertinent case law discussed by Judge Watts, and join her holding that

> for a law enforcement officer to have reasonable articulable suspicion to frisk one of multiple occupants of a vehicle from which an odor of marijuana is emanating, the totality of circumstances must indicate that the occupant in question is armed and dangerous. An odor of marijuana alone emanating from a vehicle with multiple occupants does not give rise to reasonable articulable suspicion that the vehicle's occupants are armed and dangerous and subject to frisk.

Watts Slip Op. at 39. I write separately to explain my simpler—though admittedly less comprehensive—approach to this case.

The Fourth Amendment protects individuals from "unreasonable searches and seizures." U.S. Const. amend. IV. For a frisk to be reasonable, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts," give her reason to believe the individual is armed and dangerous. *Terry v. Ohio*, 392 U.S. 1, 21, 27 (1968). "[U]nparticularlized suspicion" or a mere "hunch" is not sufficient. *Id.* at 27. We have repeatedly acknowledged that "[w]hile there undoubtedly is some risk to the police in every confrontation, *Terry* has never been thought to authorize a protective frisk on the occasion of every authorized stop." *Sellman v. State*, 449 Md. 526, 545 (2016) (quoting *Simpler v. State*, 318 Md. 311, 321 (1990)). The State's argument that Trooper Dancho had reasonable suspicion that Norman was armed and dangerous rests on the inference that a passenger in a vehicle that smells of raw marijuana is involved in drug distribution, which often involves weapons. But this inference crumbles under the weight of the Fourth Amendment.

It is not reasonable for a police officer to believe that a passenger in a vehicle that smells of marijuana is selling drugs. Unlike *Maryland v. Pringle*, 540 U.S. 366, 373 (2003), in which the U.S. Supreme Court reasoned that the discovery of large amounts of cash and cocaine in a vehicle suggested drug dealing, a police officer who smells marijuana coming from a car has not yet uncovered any evidence of drug dealing. Indeed, the officer cannot assume that the occupants are engaged in criminal activity at all—in Maryland, the possession of less than ten grams of marijuana is no longer a criminal offense. Md. Code (2014, 2012 Repl. Vol., 2016 Supp.), § 5–601.1(b) of the Criminal Law Article. In light of this legislation, the association between marijuana and guns becomes even more attenuated, as non-criminal recreational users are far less likely to be armed and dangerous.

Our recent decision in *Robinson v. State*, 451 Md. 94 (2017), in which we held that the smell of marijuana gives police officers probable cause to search a vehicle, does not weaken this analysis. To justify a vehicle search under the Fourth Amendment, a police officer must have probable cause to believe evidence of a crime or contraband is present. *Florida v. Harris*, 133 S. Ct. 1050, 1055 (2013) (citation omitted). In *Robinson*, we reasoned that although possession of a small amount of marijuana is no longer a crime, it is still illegal to possess, and therefore still contraband. *Robinson*, 451 Md. at 125. Thus, its smell gives rise to probable cause to search the automobile to recover the illegal substance. *Id.* at 130–31. But to conduct a *Terry* frisk, a police officer must have reason to believe that an individual has a weapon—not just contraband. *In re David S.*, 367 Md. 523, 544 (2002) ("*Terry* frisks are limited to a search for weapons that might place the officer or the public in danger." (citation omitted)); *see also Bailey v. State*, 412 Md. 349,

2

366 (2010) (*Terry* frisk unconstitutional when defendant was in high crime area, had "glossy" eyes, failed to respond to police questions, and smelled of ether, which is used in PCP).

Certainly, if a police officer uncovers enough evidence of drug possession to give her probable cause to arrest the vehicle's occupants, such as in *Pringle*, the officer could then conduct a search of each individual incident to the arrest. *United States v. Robinson*, 414 U.S. 218, 235 (1973). But without probable cause to arrest, reasonable suspicion of drug possession **alone** does not justify a *Terry* frisk. As we recently reiterated, "minor crimes do not, in and of themselves, justify a *Terry* frisk *without additional circumstances* that establish reasonable suspicion that a suspect is armed and dangerous." *Sellman*, 449 Md. at 560 (emphasis in original); *see also Longshore v. State*, 399 Md. 486, 514 (2007) (explaining that when police stopped defendant on suspicion of drug possession, they had no "reason to believe that [he] was armed and dangerous").

To the extent that other courts, including the Court of Special Appeals, see, e.g., *United States v. Rooks*, 596 F.3d 204, 210 (4th Cir. 2010); *Stokeling v. State*, 189 Md. App. 653, 667 (2009), have suggested that the scent of marijuana definitively indicates a criminal drug enterprise, I would expressly reject that conclusion. Judge Watts distinguishes a number of these cases on the basis that each included additional factors that gave rise to a reasonable suspicion that the defendant was armed and dangerous.[1] Watts Slip Op. at 44–

---

[1] Judge Watts distinguishes this case from *Stokeling v. State*, 189 Md. App. 653 (2009), *Leach v. State*, 957 So. 2d 717 (Fla. Dist. Ct. App. 2007), *United States v. Sakyi*, 160 F.3d 164 (4th Cir. 1998), *United States v. Rooks*, 596 F.3d 204 (4th Cir. 2010), and *People v. Collier*, 80 Cal. Rptr. 3d 458 (2008). Watts Slip Op. at 44–49.

49. That may be the case, but in seeking to harmonize this case law, I fear her opinion muddies the water. Because we are not bound by the reasoning of any of these courts, I would decline to adopt their treatment of the scent of marijuana rather than distinguish them factually.[2]

The smell of marijuana—no matter how strong—did not give Trooper Dancho reasonable suspicion that Norman and his companions were armed and dangerous. To conduct a *Terry* frisk, police officers must have evidence pointing to weapons, not only marijuana. I join in Judge Watts's holding that the *Terry* frisk was an unreasonable search in violation of the Fourth Amendment.

Chief Judge Barbera has authorized me to state that she agrees with the views set forth herein.

---

[2] For example, in *Rooks*, the U.S. Court of Appeals for the Fourth Circuit held that the smell of marijuana coming from a vehicle justified a *Terry* frisk. The court explained, "Because [the police officer] detected marijuana in the Mercury, he was authorized to conduct a pat-down for weapons." *Rooks*, 596 F.3d at 210. In *Stokeling*, the Court of Special Appeals explained:

> [W]hen a certified K–9 alerts to the presence of narcotics in a vehicle in which there is more than one occupant, there is at least reasonable, articulable suspicion to believe that the occupants of the vehicle are engaged in a joint enterprise and together are in possession of narcotics. . . . Here, reasonable, articulable suspicion that the appellant was in possession of illegal narcotics in turn raised reasonable, articulable suspicion that he was in possession of a firearm.

*Stokeling*, 189 Md. at 667. I would expressly disagree with the reasoning of both of these courts.

4

Circuit Court for Somerset County
Case No. 19-K-15-010495
Argued: February 3, 2017

IN THE COURT OF APPEALS
OF MARYLAND

No. 56

September Term, 2016

_____

JOSEPH NORMAN, JR.

v.

STATE OF MARYLAND

_____

Barbera, C.J.
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

_____

Dissenting Opinion by Getty, J.,
which McDonald, J., joins.

_____

Filed: March 27, 2017

I respectfully dissent from the Court's conclusion that Trooper Dancho's frisk of Mr. Norman was not supported by a reasonable, articulable suspicion that Mr. Norman was armed and dangerous. Although Judge Watts presents a thorough and well-reasoned discussion of the relevant cases from Maryland as well as other jurisdictions, I do not believe her opinion gives adequate consideration to the concerns for the safety of law enforcement officers under the facts of this case.

As the Court of Special Appeals noted in its opinion below, "our courts have long recognized both the inherent dangers involved in traffic stops, at which officers may encounter drug activity unexpectedly and without the opportunity to prepare to defend themselves, and the close correlation between the presence of drugs and the presence of weapons." *Norman v. State*, No. 1408, Sept. Term 2015, 2016 WL 4261800, at \*4 (Md. Ct. Spec. App. Aug. 11, 2016) (citing *Bost v. State*, 406 Md. 341, 360 (2008); *Stokeling v. State*, 189 Md. App. 653, 667 (2009); *Hicks v. State*, 189 Md. App. 112, 134 (2009); *Dashiell v. State*, 143 Md. App. 134, 153 (2002), *aff'd*, 374 Md. 85 (2003); *Banks v. State*, 84 Md. App. 582, 591 (1990)). The circuit court also cited increasing concerns for officer safety as a factor bearing on the reasonableness of the *Terry* frisk in this case:

> Courts have recognized that attacks against law enforcement officers have become prevalent. There is a greater need for police to take protective measures to insure their safety and that of the community that might have been unacceptable in earlier times so *Terry* searches have been expanded to accommodate those concerns.
>
> \* \* \*
>
> Given the additional weapons, specifically guns are often associated with drug activity[,] the [c]ourt is persuaded that under the totality of the circumstances in this case that a pat down for weapons was reasonable.

Moreover, the circuit court was in the best position to evaluate whether this particular traffic stop posed a threat to Trooper Dancho's safety, and its assessment of this issue should be entitled to deference. *See Bowling v. State*, 227 Md. App. 460, 467 ("We also 'accept the suppression court's first-level factual findings unless clearly erroneous, and give due regard to the court's opportunity to assess the credibility of witnesses.'" (quoting *Gorman v. State*, 168 Md. App. 412, 421 (2006))), *cert. denied*, 448 Md. 724 (2016). The circuit court is most likely to be familiar with the area where the stop took place, the dangers that law enforcement officers regularly face in that area, and the overall threat to officer safety in that particular community. As such, I would defer to the circuit court's assessment of the dangers Trooper Dancho was faced with during his stop of Mr. Norman and the other occupants.

Furthermore, I disagree with Judge Watts' attempt to distinguish *United States v. Sakyi* and *United States v. Rooks*, and its ultimate decision to "decline to follow" these cases from the United States Court of Appeals for the Fourth Circuit. *See* Judge Watts' Slip Op. at 47–49. In *Sakyi*, the Fourth Circuit emphasized the Supreme Court's focus on officer safety when evaluating the reasonableness of *Terry* frisks. *See United States v. Sakyi*, 160 F.3d 164, 167–68 (4th Cir. 1998).

> "Reasonableness" [under the Fourth Amendment] is determined by weighing the "public interest" against the "individual's right to personal security free from arbitrary interference by law officers." The public interest . . . includes the substantial public concern for the safety of police officers lawfully carrying out the law enforcement effort.

*Id.* at 167 (citations omitted). The Fourth Circuit also noted the increased dangers inherent in routine traffic stops, citing "the reality that such stops involve an investigation at close

2

range when the officer remains particularly vulnerable in part *because* a full custodial arrest has not been effected, and the officer must make a quick decision as to how to protect himself and others from possible danger." *Id.* at 168 (internal quotation marks omitted) (quoting *Michigan v. Long*, 463 U.S. 1032, 1052 (1983)). The Fourth Circuit then concluded, "In the absence of ameliorating factors, the risk of danger to an officer from any occupant of a vehicle he has stopped, when the presence of drugs is reasonably suspected but probable cause for arrest does not exist, is readily apparent." *Id.* at 169.

Twelve years later, in *Rooks*, the Fourth Circuit reaffirmed that "under our precedent, an officer who has reasonable suspicion to believe that a vehicle contains illegal drugs may order its occupants out of the vehicle and pat them down for weapons." *United States v. Rooks*, 596 F.3d 204, 210 (4th Cir. 2010) (citing *Sakyi*, 160 F.3d at 169).

Contrary to Judge Watts' assertion, *Sakyi* and *Rooks* do not "creat[e] a presumption of reasonable suspicion, which could be overcome by circumstances allaying a law enforcement officer's safety concerns." Judge Watts' Slip Op. at 47. Instead, *Sakyi* and *Rooks* simply apply the standard first enunciated by the Supreme Court in *Terry* that, "in determining whether the officer acted reasonably in such circumstances, due weight must be given . . . to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry v. Ohio*, 392 U.S. 1, 27 (1968).

In this case, Trooper Dancho drew on his experience in investigating criminal activity, specifically possession of drugs, and determined that a pat down of Mr. Norman's clothing for the presence of weapons was justified by the circumstances of the traffic stop. The circuit court, which was in the best position to evaluate the reasonableness of Trooper

3

Dancho's determination, agreed that the pat down was reasonable. As the Supreme Court asserted in *Terry*, "it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties." *Id.* at 23. I believe that Judge Watts' opinion— which requires police officers, in order to justify a pat down for weapons, to point to additional circumstances beyond probable cause that drugs are present in a vehicle with multiple occupants—will subject police officers to "take unnecessary risks in the performance of their duties." *Id.* Therefore, I would hold that Trooper Dancho's frisk of Mr. Norman was supported by a reasonable, articulable suspicion that Mr. Norman was armed and dangerous, and affirm the judgment of the Court of Special Appeals.

Judge McDonald has advised that he joins in this opinion.